## Richmond

CHARLES T. CROWDER V. COMMONWEALTH OF VIRGINIA, EX REL. STATE CORPORATION COMMISSION.

GEORGE H. ELLIS V. COMMONWEALTH OF VIRGINIA, EX REL. STATE CORPORATION COMMISSION.

June 13, 1955.

Record Nos. 4380, 4381.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*Woodward & Ferguson* and *Frank A. S. Wright,* for the appellants.

*J. Lindsay Almond, Jr., Attorney General* and *C. F. Hicks, Assistant Attorney General,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

These cases, here on appeals from the State Corporation Commission of Virginia, as a matter of right, present the question wheth-

er the gross receipts road tax provided under § 58-638,* Code of Virginia, 1950, may be imposed on appellants who operate motor vehicles on the highways of Virginia for the transportation of United States mail for compensation.

It was agreed before the State Corporation Commission that the cases be heard together and that a decision in one would be determinative of the other. The record contains the evidence and exhibits relating to the operations of Charles T. Crowder. The facts are not in dispute.

The appellant, Crowder, a resident of Virginia, operates ten motor vehicles over the highways of Virginia exclusively in the transportation of United States mail for compensation, from and to points in Virginia and North Carolina. He owns the motor vehicles and selects and employs their drivers. He fixes the wages and hours of his employees, prescribes their duties, and controls their time of employment. He purchases the necessary fuel, lubricants and license tags for his vehicles. Neither he nor any of his employees is covered by the United States Civil Service, or Retirement System. He performs his duties under written contracts with the United States, which provide compensation in an annual sum, payable monthly. The routes to be traveled, the schedules to

* § 58-638. "Except as hereinafter otherwise provided, every person who operates, or causes to be operated, on any highway in this State, any motor vehicle, trailer or semi-trailer for the transportation of property for compensation, whether for rent, or for hire, or as a contract carrier, or as a common carrier, and every common carrier by motor vehicle, trailer or semi-trailer of passengers, shall pay quarterly to the State Treasurer, on or before the fifteenth day of April, July, October and January of each year, in addition to any other fees and taxes imposed by law upon motor vehicles, trailers and semi-trailers, and upon the operation thereof, and in addition to any motor fuel tax paid or payable by such person, a road tax calculated on the gross receipts derived from such operations during the quarter year ending with the preceding month, according to the following schedule:

"(1) Two per centum of the gross receipts derived by such person from all intrastate operation; and

"(2) Two per centum of such proportion of the gross receipts derived by such person from all interstate operations as the total number of miles traveled in interstate operations by the vehicles of such person on the public highways of this State bears to the total number of miles traveled in interstate operations by the vehicles of such person both within and without this State, including miles traveled on streets in cities and towns embraced within the highway system of this State, but exclusive in each case of the miles traveled in this State on any street maintained exclusively by any city or town.

"All taxes so collected shall be credited to the highway maintenance and construction fund.

"The provisions of this section shall apply for the tax year beginning January first, nineteen hundred forty-nine, and annually thereafter until otherwise provided by law."

be followed, and the terminii to be served as specifically set out. Provisions for cancellation, renegotiation, and for extra compensation, should any service in addition to that specified be necessary, are prescribed. Neither of the appellants holds a certificate of necessity and convenience as a common carrier.

The appellants contend that since under the provisions of the U. S. Constitution (Article 1, Section 8), Congress has assumed exclusive jurisdiction over post roads and post routes and has provided for carrying the mail (U. S. C. A., Title 39, Chapter 14), the transportation of mail is exclusively a Federal Government function, and cannot be burdened with taxation by the several States. Consequently, they claim that since they are engaged solely in the carriage of mail upon terms and conditions fixed by the Postmaster General of the United States, they are engaged in a purely governmental function, and, therefore, not subject to the imposition of the tax. They argued before the Commission, as they do here, that the burden of a gross receipts road tax levied on their gross receipts falls, in fact, on the Federal Government. In support of their contentions, they invoke certain decisions in the field of interstate commerce, where taxes upon such commerce have been held to be an unconstitutional burden.

The State Corporation Commission assessed Crowder with gross receipts road taxes in the sum of $3,200.70, for the period beginning January 1, 1951, through December 31, 1953, including penalty and interest to January 22, 1954. It assessed George H. Ellis with similar taxes in the sum of $1,214.45 for the same period, including penalty and interest.

Appellants do not question the amount of the taxes assessed, if their operations be subject to the taxes.

A review of the decisions of the Supreme Court discloses that "the trend of its decisions is not to extend governmental immunity from state taxation and regulation beyond the National Government itself and governmental functions performed by its officers and agents." *Penn Dairies* v. *Milk Control Com.*, 318 U. S. 261, 270, 87 L. ed. 748, 63 S. Ct. 617.

The question here involved is similar to that before the Supreme Court of the United States in *Alward* v. *Johnson*, 282 U. S. 509, 75 L. ed. 496, 51 S. Ct. 273, 75 A. L. R. 9. There the plaintiff was engaged in operating an automotive stage line between two points in California, and carried the mail by motor vehicles under a con-

tract with the Post Office Department. Two-thirds of his gross receipts, upon the whole of which he was taxed, were derived from carrying the mails, the remainder from transporting passengers and freight. In upholding the right of California to collect a 5% gross receipts tax levied and collected exclusively for highway purposes, the Court said:

"Nor do we think petitioner's property was entitled to exemption from state taxation because used in connection with the transportation of the mails. There was no tax upon the contract for such carriage; the burden laid upon the property employed affected operations of the Federal Government only remotely. *Union P. R. Co.* v. *Peniston*, 18 Wall 5, 30, 21 L. ed. 787, 791; *Metcalf* v. *Mitchell*, 269 U. S. 514, 70 L. ed. 384, 46 S. Ct. 172. The facts in *Panhandle Oil Co.* v. *Mississippi*, 277 U. S. 218, 72 L. ed. 857, 56 A. L. R. 583, 48 S. Ct. 451, and *New Jersey Bell Teleph. Co.* v. *State Bd. of Taxes & Assessments*, 280 U. S. 338, 74 L. ed. 463, 50 S. Ct. 111, were held to establish direct interference with or burden upon the exercise of a Federal right. The principles there applied are not controlling here." (282 U. S. at 514, 75 L. ed. at 499).

While in that case the carrier transported passengers and freight, as well as mail, and here the carriers transport mail exclusively, there can be no difference in legal principle because of the difference in the subjects of transportation, or in the proportion of the receipts derived therefrom. Immunity from taxation is not based upon the character of the subject transported or upon the apportionment of a taxpayer's income.

It will be noted that the Court distinguished the case of *Panhandle Oil Co.* v. *Mississippi, supra*, relied upon by appellants, in which it had been held that the State could not levy an excise tax on gasoline sold to the United States.

In *James* v. *Dravo Contracting Co.*, 302 U. S. 134, 82 L. ed. 155, 58 S. Ct. 208, the Court held that West Virginia could levy an occupation tax upon the gross receipts paid by the United States to a building contractor on work performed within the limits of that State. The Court there said:

"The tax is not laid upon the Government, its property or officers.

\*      \*      \*      \*      \*      \*      \*

"The tax is not laid upon an instrumentality of the Government.

\* \* \* Respondent is an independent contractor. The tax is non-discriminatory. (302 U. S. at 149)

\*     \*     \*     \*     \*     \*     \*

"Respondent has no constitutional right to immunity from non-discriminatory local taxation and the mere fact that the tax in question burdens respondent is no defense. The defense is that the tax burdens the Government and respondent's right is at best a derivative one. He asserts an immunity which, if it exists, pertains to the Government and which the Government disclaims.

\*     \*     \*     \*     \*     \*     \*

"In *Alward* v. *Johnson*, 282 U. S. 509, 75 L. ed. 496, 51 S. Ct. 273, 75 A. L. R. 9, *supra*, as already noted, the tax was upon gross receipts and tnese were derived from a contract for carrying the mails, but the tax was upheld. It there appeared that the tax was in lieu of taxes upon the property and had been treated by the State Court as a property tax. But if the tax as actually laid upon the gross receipts placed a direct burden upon the Federal Government so as to interfere with the performance of its functions, it could not be saved because it was in lieu of a tax upon property or was so characterized." (302 U. S. at 158, 82 L. ed. at 171).

Referring to the facts of the case under review, this was said:

"But if it be assumed that the gross receipts tax may increase the cost to the Government, that fact would not invalidate the tax. With respect to that effect, a tax on the contractor's gross receipts would not differ from a tax on the contractor's property and equipment necessarily used in the performance of the contract. Concededly, such a tax may validly be laid. \* \* \* The fact that the tax on the gross receipts of the contractor in the *Alward case, supra,* might have increased the cost to the Government of the carriage of the mails did not impress the Court as militating against its validity." (302 U. S. at page 160).

The *Panhandle case, supra,* was overruled rather than distinguished in the later case of *Alabama* v. *King and Boozer,* 314 U. S. 1, 86 L. ed. 3, 62 S. Ct. 43, where the State was allowed to collect a sales tax on building material sold to contractors constructing an Army camp for the United States under a "cost-plus fixed-fee" contract. In that case Mr. Chief Justice Stone said;

"The Government, rightly, we think, disclaims any contention that the Constitution, unaided by Congressional legislation, prohibits a tax exacted from the contractors merely because it is passed on economically, by the terms of the contract or otherwise, as a part of the construction cost to the Government. So far as such a nondiscriminatory state tax upon the contractor enters into the cost of the materials to the Government, that is but a normal incident of the organization within the same territory of two independent taxing sovereignties. The asserted right of the one to be free of taxation by the other does not spell immunity from paying the added costs, attributable to the taxation of those who furnish supplies to the Government and who have been granted no tax immunity. So far as a different view has prevailed, see *Panhandle Oil Co.* v. *State ex rel Knox, supra; Graves* v. *Texas Co., supra,* we think it no longer tenable. (314 U. S. at 8, 9, 86 L. ed. at 6). (Citing Cases)

\*　　\*　　\*　　\*　　\*　　\*　　\*

"The added circumstance that they were bound by their contract to furnish the purchased material to the Government and entitled to be reimbursed by it for the cost, including the tax, no more results in an infringement of the Government immunity than did the tax laid upon the contractor's gross receipts from the Government in *James* v. *Dravo Contracting Co.*" (314 U. S. at 14, 86 L. ed. at 9).

Cf. *Helvering* v. *Mountain Producers Corp.*, 303 U. S. 376, 82 L. ed. 907, 58 S. Ct. 623; *Sollitt* v. *Com.*, 161 Va. 854, 172 S. E. 290.

In *Oklahoma Tax Commission* v. *Texas Co.*, 336 U. S. 342, 93 L. ed. 721, 69 S. Ct. 561, the State of Oklahoma was allowed to collect a tax on the gross value of production and an excise tax on each barrel of petroleum produced from lessees of Federal held Indian lands. In that case the Court reviewed its holdings over many years relative to the limit of governmental immunity, and overruled five of its earlier decisions. In support of its conclusion, the Court said:

"Equally significant was *Alward* v. *Johnson*, 282 U. S. 509, 514, 75 L. ed. 496, 499, 51 S. Ct. 273, 75 A. L. R. 9, which sustained a state tax measured by gross receipts on the property of a stage line engaged in carrying the mails." (336 U. S. at 359).

Appellants refer to and cite *Railway Express Agency* v. *Commonwealth of Virginia*, 347 U. S. 359, 98 L. ed. 757, 74 S. Ct. 558. That case is not in point here. It involves the imposition of a

privilege tax under Code, §§58-546 and 58-547; whereas the tax imposed under Code, § 58-638 is a tax levied on carriers of property for use of the public highways of the State.

Appellants also cite and rely upon a number of decisions from other courts which tend to support their contention. Those decisions, however, represent views which have been distinguished, modified or reversed by later cases. Our views are in harmony with the later decisions of the Supreme Court, as we understand them.

The tax imposed under Code, § 58-638 is a road use tax. It is not levied on the entire gross receipts of the interstate carrier; but only upon that percentage of its gross receipts that the number of miles operated over Virginia highways bears to the total number of miles traveled in interstate operation. It is collected and credited to the Highway Maintenance and Construction Fund, and its validity as a tax imposed for the use of State highways by an interstate carrier is now well settled. *Clark* v. *Poor*, 274 U. S. 554, 71 L. ed. 1199, 47 S. Ct. 702; *Aero Mayflower Transit Co.* v. *Board of R. R. Commrs.*, 332 U. S. 495, 92 L. ed. 99, 68 S. Ct. 167; *Capitol Greyhound Lines* v. *Brice*, 339 U. S. 542, 94 L. ed. 1053, 70 S. Ct. 806; *Bode* v. *Barrett*, 344 U. S. 583, 97 L. ed. 567, 73 S. Ct. 468; *The Adley Express Co.* v. *Commonwealth of Virginia*, 196 Va. 1007, 86 S. E. (2d) 818.

Under the language of the Act, the tax applies to "every person who operates, or causes to be operated, on any highway in this State, any motor vehicle, trailer or semi-trailer for the transportation of property for compensation, whether for rent or hire, or as a contract carrier, or as a common carrier. * * *." This language needs no interpretation.

The appellants carry the mail under written contracts between them and the Postmaster General of the United States, acting under the authority and conditions imposed by Congress (U. S. C. A., Title 39, Chapter 12). They are not officers or employees of the Federal Government or of any of its departments. They are independent contractors doing certain prescribed work for the Government at fixed compensation. As such the usual rules governing the construction of contracts applies to contracts for carrying the mails. 41 Am. Jur., Post Office, § 78, page 753; 72 C. J. S., Post Office, § 72e, page 302.

The terms and conditions of the contracts are merely specifications

indicative of the service to be performed and not of the character of the agency by which they are performed.

However extensively the Government may have reserved the right to specify and control the actions of the contractors in carrying the mail, neither the reservation or exercise of that power gave to the contractors the status of a representative or agent of the Government. They were and are merely obligated to do certain specified work at a fixed compensation, and enjoy no official capacity.

For the foregoing reasons, the final order of the State Corporation Commission in each of the cases is affirmed.

*Affirmed.*