299 P.2d 198

**C. L. LANE, as Superintendent of the Division of Motor Vehicles of the Arizona Highway Department, Appellant,**

**v.**

**Blain LEWIS, sometimes known as B. Blaine Lewis, Appellee.**

**No. 6039.**

Supreme Court of Arizona.
July 3, 1956.

Robert Morrison, Atty. Gen., R. G. Langmade and Ronald M. Bond, Asst. Attys. Gen., for appellant.

Duane Bird and Thomas L. Hall, Nogales, for appellee.

LA PRADE, Chief Justice.

This is an action for a judgment declaring that Section 66–518, 1952 Cum.Supp., A.C.A.1939 (now A.R.S. § 40–641), imposing a license tax on motor carriers of property, is not applicable to plaintiff, and for the recovery of said tax, paid under protest. The court, sitting without a jury, held that Section 66–518, as applied to plaintiff, was invalid and, as a result, awarded plaintiff judgment for the aforementioned tax, plus interest. From that judgment defendant has prosecuted this appeal.

Reduced to the basic minimum, the facts, stipulated to by the parties, show that throughout the period in question plaintiff carried the United States mails by motor vehicle under contracts with the Federal Government, travelling in part upon public highways of Santa Cruz County.

■ The primary question before us is whether this state can exact a license tax from one who delivers mail by motor vehicle over the public highways of Arizona under a contract with the United States Government. A secondary question concerns the meaning of the term "property" as used in Section 66–518, supra, and whether it encompasses the term "mail". Section 66–518 reads in part as follows:

"(a) In addition to all other taxes and fees * * * every contract motor carrier of property shall pay to the state * * * a license tax of two and one-half (2½) per cent of the gross receipts from his operations within the state for the next preceding calendar month * * *.

"(b) * * * Upon receipt of such taxes the vehicle superintendent shall forthwith transmit the same to the state treasurer, who shall credit such taxes to the state highway fund."

By Section 66–501, A.C.A.1939 [A.R.S. § 40–601], a "'Contract motor carrier of property'" is defined as "any person engaged in the transportation on any public highway by motor vehicle of property, for compensation," excluding common carriers. Were this a case of first impression in the United States there might be some question as to whether "mail" can properly be considered "property" within the meaning of the aforementioned statute. But inasmuch as the Supreme Court of the United States has already held, affirming the Supreme Court of California, that a California statute assessing a tax on companies engaged "'in the business of transportation of * * property'" applies to private contract carriers of mail, Alward v. Johnson, 1931, 282 U.S. 509, 51 S.Ct. 273, 75 L.Ed. 496, and since we fail to see why mail should not be considered to be property of some sort, we conclude that the word "property" as used in Section 66–518, supra, includes mail.

We now come to the main question which involves the respective powers of the state and national governments in our federal system. Can Arizona exact a license tax from a private mail carrier, under contract with the United States Government, who delivers the mail by motor vehicle over the public highways of this state? The doctrine which forbids a state to tax the United States Government or one of its instrumentalities goes all the way back to McCulloch v. State of Maryland, 1819, 4 Wheat 316, 4 L.Ed. 579, when first enunciated by Chief Justice Marshall. At the present time it is recognized that this immunity is implied from "the provisions of the Constitution which look to the maintenance of the dual system" of national and state governments. Indian Motorcycle Co. v. United States, 1931, 283 U.S. 570, 575, 51 S.Ct. 601, 603, 75 L.Ed. 1277. At one time this immunity was liberally extended to include the income of private persons

closely associated with government but in recent years it has been withdrawn. Graves v. People of State of New York ex rel. O'Keefe, 1939, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927. However, the greatest inroads on the formerly broad scope of intergovernmental immunity have occurred in the cases of private contractors with the Federal Government. James v. Dravo Contracting Co., 1937, 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155; State of Alabama v. King & Boozer, 1941, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3; Esso Standard Oil v. Evans, 1953, 345 U.S. 495, 73 S.Ct. 800, 97 L.Ed. 1174. At the present time it would seem, in the absence of a discriminatory tax, that the primary question is not whether the government will ultimately have to stand the economic burden of the tax, but whether the legal incidence of the tax falls on the government. Esso Standard Oil v. Evans, supra; Arizona State Tax Commission v. Garrett Corp., 1955, 79 Ariz. 389, 291 P.2d 208.

█ Both under the Alward opinion and the more recent cases cited above it is clear that, in its effect at least, the tax in this case, falling as it does on plaintiff alone, and having only remote effects on the Federal Government, is not an invalid burden. But appellee argues that the effect of the tax at bar is not in issue. He argues that the sole issue is whether the State of Arizona can exact a license tax from plaintiff for the privilege of carrying the mails, ad-

mittedly a function of the Federal Government. Appellant counters with the argument the license tax involved, as applied to appellee, does not purport to tax him for the privilege of carrying the mails, but rather for the privilege of carrying the mails by motor vehicle on the public highways. Inasmuch as we believe that this distinction may be significant we must look at Section 66–518, supra, to see whether it imposes a license tax on carriers in return for their use of the highways.

This question has previously been resolved by this court. In Claypool v. Lightning Delivery Co., 1931, 38 Ariz. 262, 272, 299 P. 126, 130, we held that Section 1680, R.C.1928 the predecessor to our present Section 66–518, supra, and which also was called a "license tax", was "in effect a tax imposed on common carriers for the privilege of operating on those highways." As indicated by the second paragraph of Section 66–518, supra, all the monies collected pursuant to that section are credited to the state highway fund. Under Section 59–303, A.C.A.1939 [A.R.S. § 18–132], the state highway fund can be used only for state highway purposes and nothing else. We conclude, as we did previously in the Claypool case, that the license tax paid pursuant to the mandate of Section 66–518, supra, is actually a tax paid for the privilege of operating motor vehicles engaged in the transportation of property on public highways in the state.

Having thus characterized our statute we find that the precise question now before this court has already been answered by the Supreme Court of the United States. In 1934, the Supreme Court upheld the right of a state to levy such a privilege tax when it affirmed (without opinion) the Supreme Court of New Hampshire in Tirrell v. Johnston, 1934, 293 U.S. 533, 55 S.Ct. 238, 79 L.Ed. 641, affirming 1934, 86 N.H. 530, 171 A. 641. See, also, Crowder v. Commonwealth ex rel. State Corp. Comm., 1955, 197 Va. 96, 87 S.E.2d 745. Briefly, the facts in the Tirrell case were as follows: the State of New Hampshire had levied a tax or road toll of four cents a gallon on each gallon of gasoline sold; the plaintiff was a private mail carrier under contract with the Federal Government; plaintiff used his own automobile to deliver the mail and paid all of his own expenses; plaintiff sued to restrain the Attorney General and State Treasurer from prosecuting him for failure to pay said tax or toll. The Supreme Court of New Hampshire, under the impression that whether the charge involved was merely compensation for the use of its highways, or a tax for the same privilege, was a question of federal rather than state law, ruled that in either case the plaintiff was liable therefor. A careful reading of the opinion, however, discloses that the New Hampshire court preferred to characterize the toll involved as a "charge" rather than a tax. On page 645 of 171 A. the court states:

> "These important distinctions seem to lead to the conclusion that the charge here in question is, in all its substantial elements, one laid for the use of facilities furnished rather than a tax for the support of government."

and again on the same page:

> "Basically, and in every substantial aspect, the fee here in question is a charge for the use of highways."

Following this latter statement the court points out that due to the development of travel by automobile and the accompanying demand for roads the states were subjected to great expense in meeting this demand, with the result that the states had been forced to obtain "direct contribution" for such improvements from the parties using the highway facilities. Then the court went on to show how the Supreme Court of the United States had recognized the need and validity of such proprietary charges, citing Hicklin v. Coney, 1933, 290 U.S. 169, 173, 54 S.Ct. 142, 78 L.Ed. 247, wherein a state license fee based upon the carrying capacity of motor vehicles was upheld as applied to interstate carriers, since the fees were collected " ' "for the purpose of maintaining the public highways over which such motor vehicles shall operate, *as compensation for their use*" ' ". (Italics

added.) Following the discussion of the Hicklin case, the new Hampshire court added:

"The present case thus stands upon the proposition that the state is making a reasonable uniform charge for the use of its highways."

In the second half of the opinion the court ruled that if the United States Supreme Court should hold the toll to be a tax rather than a charge, nevertheless it would still be a valid levy. On page 650 of 171 A. the court put the issue in the same way as this court sees it in the case at bar.

"* * * The charge is not made because the plaintiff is to carry the mail, but because he is to operate an automobile upon the highways of the state."

Whether the toll in the Tirrell case be called a charge or a tax, it is obvious it was imposed solely for the privilege of using the highways. As in our case all the monies so collected were employed exclusively for the construction, repair and improvement of the highways. We believe the Tirrell case, as affirmed by the Supreme Court of the United States, to be controlling of the issue at bar in every respect.

Appellee raises the point that the appellant failed to follow the proper statutory procedure in assessing the taxes allegedly due by appellee inasmuch as said taxes were not demanded on a monthly basis, but we find no merit in this argument.

Judgment reversed with directions to vacate the judgment and dismiss the complaint.

UDALL, WINDES, PHELPS and STRUCKMEYER, JJ., concur.