[Civil No. 2132.   Filed May 1, 1924.]

[225 Pac. 329.]

# FRANK M. McCARTHY, Appellant, v. CITY OF TUCSON, a Municipal Corporation, Appellee.

1. LICENSES—ORDINANCE IMPOSING TAX ON ATTORNEYS, AS REVENUE MEASURE IS LEGAL.—Under Tucson Charter, article 4, section 3, authorizing the city "to license and regulate all and every kind of business, profession or occupation . . . to fix the rates of license tax, . . . " a revenue ordinance imposing a "license tax" on attorneys was legal as a revenue measure, since the words, "to license and regulate" construed with "to fix the rates of license tax," showed the legislative intent to delegate taxing as well as regulatory powers.

2. CONSTITUTIONAL LAW — REQUIREMENT THAT CITIES BE CHARTERED BY GENERAL ACT NOT APPLICABLE TO CITIES CREATED BY TERRITORIAL ACT.—A constitutional requirement, that municipal corporations shall be created by general, and not special laws, operates prospectively, applying only to cities chartered after the Constitution was adopted, and not those already created by act of a territorial assembly.

3. LICENSES — GRANT TO CITY OF POWER TO LICENSE OCCUPATIONS STRICTLY CONSTRUED.—The provisions of Tucson Charter (art. 4, § 3), granting city power to license occupations calls for strict construction.

4. LICENSES — OCCUPATION OF ATTORNEYS NOT SUBJECT TO REGULATION OR SUPERVISION UNDER POLICE POWER.—The occupation of attorneys at law is not subject to regulation or supervision under the police power; it being neither demoralizing, dangerous to the public, nor threatening to its health or safety.

5. STATUTES—CITY CHARTER PORTION TAKEN FROM SAME SOURCE AS CHARTER IN ANOTHER STATE CONSTRUED WITH REFERENCE TO DECISIONS THERE.—In construing a portion of a city charter, adopted from a charter of a city in another state, or from the same source as the other charter, the decisions of the courts of that state, construing such portion, are very persuasive if not controlling.

---

1.  Validity of license tax on attorneys, see note in **Ann. Cas.** 1912A, 599.  See, also, 17 **R. C. L.** 531, 533.

3.  See 17 **R. C. L.** 536.

4.  See 19 **R. C. L.** 818.

5.  See 25 **R. C. L.** 1069.

6. Licenses—Taxation—Right to Tax is Condition Precedent to Right to Fix Rate.—The right to tax is a condition precedent to the right to fix the rate of taxation, whether it be upon property or an occupation.

7. Licenses — Failure of Officials to Exercise Charter Taxing Power Does not Amount to Construction That Power Does not Exist.—Where a city was authorized, by act of a territorial assembly chartering it, "to license and regulate all . . . business, profession or occupation" and fix the rates of license tax, the act having been continued in force by the Constitution, the fact that its officials made no effort, for many years, to exercise the power or to impose a license tax on attorneys did not constitute a practical construction by them that no such power existed.

APPEAL from a judgment of the Superior Court of the county of Pima. S. L. Pattee, Judge. Affirmed.

Mr. Frank M. McCarthy, *in pro. per.*

Mr. Ben C. Hill, for Appellee.

McALISTER, C. J.—Frank M. McCarthy, appellant herein, is an attorney at law residing in the city of Tucson, where he is now and for several years has been engaged in the practice of his profession. In 1921 that municipality enacted an ordinance subjecting a number of businesses, occupations, and professions carried on therein to the payment of a license tax, and among these was that of attorney at law. The amount imposed upon those following this profession was $5 per quarter. The defendant denied the right of the city to require such a tax, and refused to pay it, whereupon the city brought suit to recover the amount due for the quarter beginning October 1, 1921, the first after the ordinance became effective, and obtained judgment. The defendant, being convinced that the judgment was wrong, has

6.    See 26 R. C. L. 13; 17 R. C. L. 537.
        See 6 C. J. 569; 12 C. J. 722; 25 Cyc. 599 (1925 Anno.), 601 (1925 Anno.), 602; 36 Cyc. 1154; 37 Cyc. 717 (1925 Anno.).

brought it here for review, and in doing so relies solely upon the proposition that the court erred in holding the ordinance valid in so far as it attempts to impose a license tax upon the business of practicing law.

The charter under which the city operates is an act of the Twelfth Territorial Assembly, approved March 7, 1883 (Laws 1883, No. 73), entitled "An act to reincorporate the city of Tucson," and section 3, art. 4, thereof empowers its common council—

"to license and regulate all and every kind of business, profession or occupation authorized by law and transacted and carried on in said city; to fix the rates of license tax upon such business, profession or occupation."

This act was in force at the time Arizona became a state, and, under section 2, art. 22, of the Constitution of the state, which continued the laws of the territory not repugnant to that instrument as laws of the state, still is.  The constitutional requirement that municipal corporations shall be created by general and not by special laws in no way affects it because this provision operates prospectively and applies only to those municipalities created after the Constitution was adopted and statehood realized. The correctness of the court's ruling, therefore, depends upon the meaning to be given the quoted portion of the act of 1883, which constitutes a part of the grant of power to the city of Tucson and calls for a strict construction.   17 R. C. L. 526.

It is conceded that the legislature has the power to authorize a municipality to impose a license tax upon an occupation, profession or business—that is, upon the privilege of following or practicing the same— and under all the authorities, save one, the *Lawyers' Tax Cases,* 8 Heisk. (Tenn.) 565, this applies to the occupation of practicing law.   See, *Ex parte Dixon,* 43 Nev. 196, 183 Pac. 642, a case in which this point is

fully discussed and numerous authorities cited. Appellant contends, however, that the language upon which appellee relies to confer this power is merely a police regulation and for this reason does not include the right to subject those engaged in any occupation to the payment of a license tax for the purpose of raising revenue. The ordinance in question, however, so far as it deals with attorneys, is clearly a revenue measure and not a police regulation. It does not undertake to supervise or regulate the practice of law in any manner, and, if it did, the attempt would be unsuccessful, because that occupation is not one subject to control by the police power, it being neither demoralizing nor dangerous to the public nor threatening to its health or safety. *City of Sonora* v. *Curtin,* 137 Cal. 583, 70 Pac. 674. But this does not prevent a municipality from providing that one practicing law within its limits shall be subject to a license tax, and that the payment thereof may be enforced in a proper proceeding. The question presented, therefore, is whether the language claimed to confer this power is sufficiently broad to do so.

Appellee contends that the words "to license and regulate" and "to fix the rates of license tax," in the language quoted above, include the right to impose a license tax for revenue only, and it appears to us that this contention is correct. The expression "to license and regulate" an occupation, unaided by the words "to fix the rates of license tax" thereupon, was held by the Supreme Court of California in 1878 to include this power. *Ex parte Frank,* 52 Cal. 606, 28 Am. Rep. 642. And a year later the question came before that court again in a case arising under the charter of the city of San Jose, which contained a provision empowering that municipality "to license and regulate all and every kind of business authorized by law and transacted and carried on in said city; to

fix the rates of license tax upon such business." *City of San Jose* v. *San Jose & Santa Clara Railroad Co.,* 53 Cal. 475. This language, it will be observed, constitutes a grant of power identical in meaning with that of the city of Tucson and almost so in wording, the only difference being that in the latter the words "profession or occupation" are added to the word "business," and upon the authority of the Frank case the court held that it included the power to raise revenue for municipal purposes by means of license fees, and the words "license tax upon said business," used in the San Jose Charter to designate the tax, it was said, indicated "clearly that it is a tax on the occupation, and not merely a license to carry on the business." The courts of that state have never departed from this view, though the question has arisen in several cases and a strong effort made in each to persuade it to do so. *Ex parte Galusha,* 184 Cal. 697, 195 Pac. 406; *Ex parte Nowak,* 184 Cal. 701, 195 Pac. 402.

Whether the portion of the Tucson Charter under consideration was taken from that of San Jose it is impossible to say with absolute certainty, but their similarity in language and identity in meaning indicate either that it was or that both came from a common source, and, under the familiar rule of construction applicable to a statute adopted from another state, render the decisions of the courts of California on this question very persuasive if not controlling. However, the purport of the Tucson Charter is such that we would be led to the conclusion reached in the case of *City of San Jose* v. *San Jose & Santa Clara Railroad Co., supra,* even though we were without the benefit of that decision, because its language justifies no other. It may be doubtful whether the words "to license and regulate" include the power to impose a license tax for revenue only. In fact, the weight of authority seems to be that they do not. But this is

not true where, in addition to them, the word "tax" occurs, for "a license fee may be imposed either for regulation or for revenue, where the city has the power to license, regulate and tax" (17 R. C. L. 536), and it will be observed that this word appears in the quoted portion of the Tucson Charter, though in a separate phrase from the other two. The city is first authorized "to license and regulate" a business and then "to fix the rates of license tax" upon that business; that is, it is empowered to authorize a business to be carried on and then to say how much tax each person following that business shall pay for this privilege. The designation of the rate to be fixed upon each profession, occupation or business as a "license tax" clearly indicates, as said by the California court, "that it is a tax on the occupation, and not merely a license to carry on the business."

The right to tax is a condition precedent to the right to fix the rate of taxation, whether it be upon property or as here upon an occupation; hence, if the intention was to delegate merely the power to "license and regulate" these various callings, it is not apparent why the rate to be fixed upon them by the municipal authorities was denominated by the legislature itself as a tax. The words "license and regulate" confer all the authority necessary for regulation purposes, but the business of practicing law is one that cannot be regulated, and it must be presumed that the legislature knew this and, therefore, that its intention in using the words "to fix the rates of license tax" was to authorize the imposition of a tax upon the privilege of following such occupation for the purpose of raising revenue and not for the purpose of doing an unauthorized and ineffective thing, namely, regulating it.

Previous to the passage of the ordinance in question the city of Tucson had made no effort to impose a tax upon the practice of the legal profession, and

appellant contends that this constitutes a practical construction by the city authorities of its charter as containing no such power and that this fact is entitled to some weight in arriving at the correct meaning of the provision under consideration. The fact that its officials made no such effort, however, amounts to nothing more than a failure to exercise a right that has existed since the adoption of its charter in 1883 and indicates only that the officials who passed and approved the ordinance in question were perhaps the first to believe, or at least to act upon their belief, that those following the profession of the law should share in the burden of the city government for the protection they receive.

No error appearing the judgment is affirmed.

ROSS and LYMAN, JJ., concur.