32 N.J. Super. 243 (1954)
108 A.2d 179
WILLIAM BELLINGTON, JOHN J. CLARK AND ELIZABETH CLARK, PARTNERS, TRADING AS EAST WINDSOR TRAILER PARK, AND JOHN BROWN, PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF EAST WINDSOR, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1954.
Decided September 29, 1954.
*245 Before Judges EASTWOOD, GOLDMANN and SCHETTINO.
Mr. Milford Salny argued the cause for plaintiffs.
Mr. Harvey T. Satterthwaite argued the cause for respondent (Messrs. Satterthwaite & Satterthwaite, attorneys).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Plaintiffs brought an action in lieu of prerogative writs to declare invalid the ordinance adopted by defendant in May 1953 to license and regulate trailer camps and camp sites within the township, as well as to declare void the first six sections of the ordinance. At the trial plaintiffs limited their attack to section 5 which prescribed the license fees, apparently abandoning all other contentions. They argued there, as here, that the license fee fixed by the ordinance for conducting a trailer camp is invalid because enacted for purposes of taxation and not regulation, and further, because it is prohibitory and confiscatory. The trial court in an oral opinion held that plaintiffs had failed to sustain the burden of establishing that the ordinance, and particularly section 5, is unreasonable and *246 confiscatory. Judgment was thereupon entered on the merits in favor of defendant. Plaintiffs appeal.
The ordinance was enacted in accordance with specific statutory authority, to be found in N.J.S.A. 40:52-1(d) and 40:52-2. N.J.S.A. 40:52-1 provides:
"The governing body may make, amend, repeal and enforce ordinances to license and regulate:

* * * * * * * *
d. * * * trailer camps and camp sites, * * *."
The trailer camp and camp site provision was added to this subsection by L. 1948, c. 425, § 1. R.S. 40:52-2 declares that:
"The governing body may fix the fees for all such licenses, which may be imposed for revenue, and may prohibit all unlicensed persons and places and vehicles, businesses and occupations from acting, being used, conducted or carried on; impose penalties for violation of ordinances providing for licenses, and revoke any license for sufficient cause and after notice and hearing."
There can be no question that this ordinance was enacted for regulatory purposes as well as for revenue. It consists of 22 sections. The first and last four sections are essentially procedural and administrative in nature. Sections 6 through 18 are patently all regulatory. Briefly, they limit the number of trailers in any camp; require the camp management to maintain a sanitary water supply; prescribe certain sanitary facilities and establish a ratio of toilets to trailers; regulate dumping, garbage and ash collection, and disposal of waste water, and provide that the board of health may impose additional sanitary requirements; require adequate lighting of grounds and toilets at certain hours; establish a minimum area per trailer space and require cars and trailers to be arranged in rows; provide for the grounds being adequately drained; establish setback lines for trailers and sanitary facilities in relation to dwellings located on other premises; regulate conversion of trailers to permanent dwellings by removal of wheels and other alterations; prohibit the use of camp premises for immoral purposes; require compliance *247 with all police, health and fire regulations; and provide that the premises shall be subject to inspection by day or night.
Section 5, which fixes the license fees and is the only section under attack, itself contains a regulatory provision  the requirement that the licensee maintain a camp registry setting forth certain specified information, and submit a copy thereof monthly to the township clerk, the municipal court clerk and the tax collector, respectively.
The ordinance represents a proper exercise by the township of the authority granted under the quoted statutes. Plaintiffs strongly rely upon Salomon v. Jersey City, 12 N.J. 379 (1953), as support for their argument that the ordinance is invalid because enacted for the purpose of taxation and not regulation. The ordinance before us is clearly distinguishable from that which suffered judicial condemnation in the Salomon case. The Jersey City enactment, made applicable to all businesses, contained no regulatory features whatever and was admittedly a taxing measure. Justice Jacobs, who wrote the opinion for a unanimous court, comprehensively reviewed the legislative and judicial background of N.J.S.A. 40:52-1 and 2. He concluded:
"In the light of all of the foregoing we consider that the primary and overriding purpose of the Legislature in enacting R.S. 40:52-1, N.J.S.A. and R.S. 40:52-2, N.J.S.A. was to authorize municipalities to license and regulate, as police measures for the public health, safety, morals or welfare, the local businesses described therein, and only incidentally to impose on the businesses thus licensed and regulated license fees for revenue which may, at least within reasonable limits, exceed the regulatory costs. * * *" (12 N.J. at page 390)
An ordinance must, of course, be construed as an entirety. The local legislative intention contained therein must be determined accordingly, and not from a part thereof. 6 McQuillin, Municipal Corporations (3rd ed.), § 20.54, p. 132. The same general rules apply in construing municipal ordinances as apply to the construction of statutes enacted by the Legislature. 37 Am. Jur., Municipal Corporations, § 187, p. 826. The established rule followed by the courts of *248 this State in the exposition of statutes has been that the legislative intention is to be derived "from a view of the whole and of every part of the statute, taken and compared together." In re Merrill, 88 N.J. Eq. 261, 273 (Prerog. 1917); Pine v. Okzewski, 112 N.J.L. 429, 433 (E. & A. 1934). In urging that the license fee imposed under the trailer ordinance is invalid because enacted for the purpose of raising revenue, and not for regulation, plaintiffs would separate the license fee clause, section 5, from the other provisions of that section, which, as noted, are regulatory. They would also separate that clause from the rest of the ordinance, which is principally made up of regulatory provisions, with a few procedural and administrative provisions included to carry out the regulations. This they may not do.
Construed as an entirety, the township ordinance comes well within the authority granted by the Legislature to municipalities generally under N.J.S.A. 40:52-1 and 2. Cf. Edwards v. Mayor, etc., of Borough of Moonachie, 3 N.J. 17 (1949).
Plaintiffs next argue that the license fee fixed by the ordinance is invalid as prohibitory and confiscatory. Section 5 provides:
"The license fee for a trailer camp or camp site shall be $200.00 per annum and the sum of $2.00 per calendar week per trailer, but for any trailer parked in a camp three days or less, the license fee shall be $1.00. Said license shall expire on December 31st of each year, and said fee is hereby expressly declared to be imposed for revenue. The said sum of $200.00 shall be payable in advance for each year. * * *"
The subject of our inquiry must therefore be whether the license fee so imposed is reasonable, within the doctrine of the Salomon and other cases dealing with license fees.
The municipal ordinance is presumed to be reasonable and valid, and this presumption governs unless it is overcome by unreasonableness apparent on the face of the ordinance itself or by extrinsic evidence of sufficient weight clearly establishing its unreasonableness. The burden of proving the unreasonableness of an ordinance is upon the party *249 asserting it. 5 McQuillin, Municipal Corporations (3rd ed.), § 18.23, p. 455; 37 Am. Jur., Municipal Corporations, § 177, p. 813; Independent Warehouses, Inc. v. Scheele, 134 N.J.L. 133, 143 (E. & A. 1946), affirmed 331 U.S. 70, 67 S.Ct. 1062, 91 L.Ed. 1346 (1947); Ring v. Mayor, etc., of Borough of North Arlington, 136 N.J.L. 494, 498 (Sup. Ct. 1948), affirmed 1 N.J. 24 (1948), appeal dismissed 335 U.S. 889, 69 S.Ct. 250, 93 L.Ed. 427 (1948); Ostroff v. Board of Commissioners of City of Camden, 7 N.J. Super. 245, 250 (App. Div. 1950). An ordinance may be sustained even though its validity be fairly debatable. In dealing with a zoning ordinance in Schmidt v. Board of Adjustment of Newark, 9 N.J. 405, 416 (1952), the Supreme Court held that "where the subject is comprehended in the police power of the state, debatable questions as to the reasonableness of the measure are not for judicial cognizance. * * * If, for example, the validity of a zoning classification be fairly debatable, the legislative judgment prevails." Judicial authority to declare an ordinance unreasonable is a power to be exercised cautiously. Courts avoid substituting their opinion for that of the municipal legislative body.
"While the unreasonableness of an ordinance ultimately is a judicial question, it is fundamental that municipal corporations are in the first instance and prima facie the sole judges of the necessity and unreasonableness of their ordinances, * * * there is a presumption of the reasonableness of an ordinance, and this presumption must at all times direct the judicial mind; hence, * * * courts are reluctant to declare a municipal ordinance, relating to a subject upon which the municipal council has statutory authority to legislate, invalid on the ground that it is unreasonable, arbitrary or oppressive." 5 McQuillin, Municipal Corporations (3rd ed.), § 18.27, p. 467.
Plaintiffs have failed to sustain their burden of proving that the ordinance is invalid because the license fees imposed are prohibitory and confiscatory. They first charge that the fees are so high as to convert a legitimate business profit into a substantial deficit. Plaintiffs' testimony was that the 1953 gross receipts of the trailer camp totalled $6,215.66, disbursements were $4,794.01, and what they call *250 their "net profit" amounted to $1,421.65. However, the "net profit" figure did not include any payment to the plaintiff partners for their work, nor any charge for return on their investment. The investment was $15,402.07, but this figure did not include the value of plaintiffs' labor in installing the facilities at the camp site. Had plaintiffs computed a reasonable return on this investment, say 6%, it would amount to $924, a figure which would have to be deducted from the gross revenue before calculating profit. Further, the testimony was that the partners put in at least 80 hours a week in taking care of the trailer camp and attending to the tenants' needs. This amounts to 4,160 man-hours a year which, at the modest figure of $1 an hour, would add $4,160 to the amount to be deducted from gross receipts before figuring profit. If one were to take into account return on investment and charges for the work of the partners, the result would be a loss of $3,662.35. Thus, the imposition of the license fee could not, as plaintiffs allege, change a profit to a loss because the trailer camp, at least in 1953, was already operating at a loss without paying the license fee.
The incentive for operating a trailer camp under such circumstances appears to lie in the fact that the plaintiffs also conduct a trailer sales business from the same premises. The court did not permit inquiry into the finances of the latter business, but the testimony of one Gazsi, treasurer of a firm operating a trailer camp in Washington Township only seven miles from plaintiffs', on the same highway, was that they operated both a trailer camp and a trailer sales business; that the trailer sales business would be affected adversely if they did not have the trailer camp, and that the camp itself makes only a very small amount of money. It is fair to assume that plaintiffs have found that the trailer camp is a necessary adjunct to their trailer sales business, and that their profit comes from their conduct of the latter enterprise.
This phase of the matter aside, there is nothing in the proofs to show that plaintiffs have attempted to comply with the ordinance, and so their contention as to its effect is *251 necessarily speculative. Plaintiffs charge $18 a month rental per trailer, plus the charge for electricity used. One of them testified that this is the maximum rental that can be charged in East Windsor Township to assure the greatest annual income, although their two competitors in the same township charge $2 and $3 more per month, respectively. The nearest to an attempt to collect the license fee was an informal discussion which plaintiff Clark had with his trailer tenants, but the result of that talk is not a matter of record, the testimony having been objected to as hearsay. This informal talk appears to have been the extent of plaintiffs' attempt to comply with the ordinance.
The testimony adduced by defendant showed that on January 1, 1952 the Gazsi trailer camp referred to above was presented with the same situation faced by plaintiffs at the adoption of the East Windsor ordinance. Gazsi testified that the Washington Township ordinance imposed a $200 yearly license fee and a weekly charge of $1.50 per week per trailer. Gazsi thereupon added $6.50 per month for township fees to the previous rental charge of $20 a month, making the charge $26.50. This did not adversely affect the operation because the trailer camp continued at about the same percentage of occupancy as before. The Gazsi camp and plaintiffs' serve the same area and would reasonably attract the same clientele. We find nothing in the record to establish that had plaintiffs raised their trailer rentals they would have suffered any appreciable loss in business or in what they term "net profit."
Although the complaint alleges that the threat of the license fee caused many of plaintiffs' tenants to move to other municipalities to avoid a higher rental charge, cross-examination of plaintiff Clark revealed that most of the tenants who moved went to points so remote from East Windsor Township as to indicate that they left the area for other reasons. Only two tenant families moved to other locations in the same general area, one of them to its own property. The rest went to Maryland, New York, Florida, Maine, West Virginia and Western Pennsylvania.
*252 It should be noted that the license fee would not affect plaintiffs' competitive advantage over other camps in East Windsor Township. The two other trailer camps, as already indicated, charge rates higher than plaintiffs' $18 a month, one charging $20 and the other $21 a month, plus electricity. Since the ordinance applies equally to all camps within the township, plaintiffs' competitive advantage would still continue when all camps paid the required license fees. Plaintiffs would likewise remain on a competitive basis with the Gazsi camp seven miles away in the adjoining township. The $200 annual license fee is the same in both townships. The weekly license fee imposed in East Windsor is $2 a week, or $8.67 a month based on 4 1/3 weeks to the month. Added to the $18 monthly charge now made by plaintiffs, trailer rentals would be $26.67 a month. The charge at the Gazsi camp (based on the $1.50 per trailer weekly license fee) would be $6.50 added to the $20 rental formerly charged, or $26.50 a month. The difference between the two camps would therefore be only 17¢ a month, or about 4¢ a week. It is difficult to believe that any tenant would leave plaintiffs' camp to go to Gazsi's in order to effect so small a saving.
It should not go unnoticed that the presence of trailer camps within defendant township results in increased municipal costs, reflected in required police, health, fire, school and other services. Defendant established that the cost of educating the 24 children who live with their parents at plaintiffs' camp  $4,560  in itself was greatly in excess of the revenue that could be derived from license fees levied on plaintiffs and which they estimated at $3,112 in the light of their average occupancy. It has been held that increased municipal costs caused by trailer camps constitute a factor which it is proper to consider in ascertaining the propriety of a trailer camp license fee. See Edwards v. Mayor, etc., of the Borough of Moonachie, 3 N.J. 17, 26 (1949), where the court said:
"There is proof that the operation of the particular trailer court has resulted in a substantial increase in the school enrollment and has given rise to special health and sanitation problems and needs."
*253 Defendant's ordinance is similar in many respects to that of the Borough of Moonachie. It provides numerous regulations for camp operation and maintenance. The principal difference is that while both set annual fees of $200 per camp, the Moonachie ordinance called for a weekly fee of $1 per trailer while the East Windsor ordinance imposes a $2 weekly fee. The Moonachie ordinance was adopted in 1947, six years before that of defendant. We may take judicial notice that the cost of municipal government has increased in the interim.
The court in the Edwards case also said, significantly:
"The quantum of the license tax or excise levied rests in the sound discretion of the legislative authority; and judicial interposition is not warranted under the cited provisions of the Federal and State Constitutions unless the tax is prohibitory and unreasonable. There is a presumption that the tax assessed is reasonable in amount; and the burden rests upon the challenger to overthrow that presumption. The inquiry is whether the exaction bears a reasonable relation to the value of the privilege conferred. Independent Warehouses, Inc., v. Scheele, supra [134 N.J.L. 133]; Bradley v. Richmond, 227 U.S. 477, 33 Sup. Ct. 318, 57 L.Ed. 603 (1913). The operator of the business made subject to the excise cannot subvert or defeat the State's delegated power to tax by undervaluing the service. Here, respondent has not borne the burden of proving that the rate of taxation is not consonant with the value of the privilege and therefore prohibitive and unreasonable." (3 N.J. at page 26)
The judgment of the Law Division is affirmed.