691 P.2d 310

**TANQUE VERDE ENTERPRISES, an Arizona corporation, dba Tanque Verde Swap Meet, Plaintiff/Appellee/Cross Appellant,**

v.

**The CITY OF TUCSON; Lewis Murphy, Mayor; Tucson City Council, and Jim Kay, Finance Director, Defendants/Appellants/Cross Appellees.**

No. 2 CA–CIV 4781.

Court of Appeals of Arizona, Division 2.

Dec. 30, 1983.

Richard B. Arrotta, Tucson, for plaintiff/appellee/cross appellant.

Frederick S. Dean, Tucson City Atty. by Michael G. Wood, Tucson, for defendants/appellants/cross appellees.

OPINION

HOWARD, Chief Judge.

This is an appeal by the city challenging the trial court's finding that Section 19–28(149) of the Tucson Code, imposing an occupational license tax on swap meet proprietors, was confiscatory and unconstitutional. Appellee, Tanque Verde Enterprises (Tanque Verde), has cross-appealed from the trial court's finding that a subsequent version of the above ordinance is valid and constitutional.

Tanque Verde conducts a swap meet on Tanque Verde Road in Tucson. It rents spaces to vendors from which they display and sell their wares. On April 7, 1981, the land on which the meet is located was annexed into the city, thus subjecting Tanque Verde to Section 19–28(149) of the Tucson Code which required Tanque Verde to pay to the city each month as an occupational license tax $1 per vendor space plus 2 per cent of its gross receipts, exclusive of the $1.

Shortly after the annexation, on June 1, 1981, Tucson Code Section 19–28(149) was repealed and a new Section 19–28(149) was enacted. The new section required a swap meet proprietor to pay an occupational license tax in the sum of 4 per cent of its gross receipts.

Tanque Verde paid, under protest, the occupational license tax for the period April 7, 1981, to April 30, 1981, ($5,343.12) and for the month of May ($8,909.11). The city contends that Tanque Verde failed to sustain its burden of proving the original ordinance was unconstitutional, that Tanque Verde's evidence was speculative and that the trial court's findings were clearly erroneous.

Tanque Verde disagrees and seeks to support the judgment by asserting that the ordinance was invalid for other reasons which we shall discuss later in this opinion.

■ There can be no doubt that the City of Tucson has the authority to impose an occupational license tax. See Chapter IV, Section 1(18) of the Tucson City Charter. Therefore, the test is not whether the tax was reasonable, but whether or not it was prohibitory, or, to put it another way, the test is whether the rates will annihilate the whole business and not just any given firm. *Kaufman v. City of Tucson*, 6 Ariz. App. 429, 433 P.2d 282 (1967). Those and only those occupations which are subject to regulation under the police power and of a character that may be absolutely prohibited may be taxed to the point of prohibition. *Martin v. Nocero Ice Cream Company*, 269 Ky. 151, 106 S.W.2d 64 (1937); *City of Louisville v. Koehler*, 264 Ky. 80 (Ky. App.1954). The occupation of being a swap meet operator is not one that can be absolutely prohibited. Therefore, if the tax imposed here was prohibitory, it violated the due process clause of the Fourteenth Amendment to the United States Constitution. See *Magnano Company v. Hamilton*, 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109 (1934).

■ This brings us to the question of the burden of proof. The party attacking a license tax has the burden of proving it to be confiscatory. *Bellington v. Township of East Windsor*, 108 A.2d 179, 32 N.J.Super. 243 (1954). A tax is presumed to be

546

constitutional and the trial court must be satisfied beyond a reasonable doubt that it is unconstitutional in order to so hold. *J.C. Penney Company v. Arizona Department of Revenue,* 125 Ariz. 469, 610 P.2d 471 (App.1980).

What was the evidence in this case which led the trial court to conclude the original licensing ordinance was invalid? Appellee's accountant testified that if it had to pay the tax for the months of April and May, it would sustain a net loss and if the tax had continued throughout the year it would have had a net loss for the whole year. Appellee's vice president, Mr. Weaver, testified that during the time in question, the average charge per vendor per day was $5.50, that he asked the vendors whether they would be willing to pay one more dollar and they said they would not. Appellee absorbed the $1 rather than pass it on to the vendors. Mr. Weaver once tried to charge for valet parking for two spaces at fifty cents each space but people would not pay for it because they could still park in the back of the area free of charge.

An economist testified that since Mr. Weaver was a good businessman, he assumed that appellee was maximizing its profits which meant that if it passed the $1 tax along to the vendors, they would not pay it and revenues would decrease by 20% thus causing appellee to have to close his business. It was his opinion that the tax was confiscatory.

The evidence disclosed that appellee was the only swap meet in town at the time of trial. There was another one in existence which was incorporated into the city by the annexation but it failed shortly thereafter.

The trial court made the following findings of fact which were critical to its decision:

" * * *

(8) That the Swap Meet tried to raise income by charging parking fees and raising fees, but this was not effective;

* * * * * *

(10) That the expert economist stated that the tax imposed as an occupational license fee as required by the Tucson Code, Section 19–28(149) would annihilate the swap meet business. He further stated that a tax which taxed a vendor at $1 per vendor's space per day, or fraction thereof, plus 2% of the gross receipts, was a confiscatory tax, and the Court accepts this uncontroverted opinion as fact; ..."

As for finding of fact No. 8, it is clearly erroneous. The swap meet never tried to raise the fees. All Mr. Weaver did was to take a survey as his vendors came in the gate and went around the swap meet listening to them talk. There was absolutely no evidence that appellee ever actually tried to collect the tax. As for the parking fees, the only evidence was the attempt to charge for valet parking. This attempt did not show appellee tried to raise fees by charging for parking.

The testimony of the expert witness was based on sheer conjecture. The theory of "maximizing profits" may have its place in economic theory but it is not the sort of material out of which one can build an attack upon the constitutionality of a taxing statute. The attacker needs concrete facts and not speculation. See *Foster Trading Corporation v. Luckett,* 303 S.W.2d 315 (Ky.App.1957). Appellee's entire case was based upon the assumption that it could not pass the tax on to its vendors. There was nothing more than that, an assumption. As observed by the courts in *Foster Trading Corporation v. Luckett,* supra, and *Bellington v. Township of East Windsor,* supra, in the absence of an attempt to comply with the ordinance, any contention as to its effect is necessarily speculative.[1]

Appellee asking the vendors if they would pay another $1 if demanded does not constitute an attempt to pass on the tax. Appellee failed to show beyond a reasonable doubt that the ordinance was confiscatory and thereby unconstitutional.

1. Of course, this would not apply to an ordinance which was, on its face, confiscatory.

Appellee seeks to uphold the trial court's decision that the original ordinance was invalid by arguing that the occupational license tax imposed was in fact a regulatory tax and as such the tax had to be limited to the necessary or probable expenses of administration and supervision. Since the amount of the tax did not correlate with these expenses, because there was no evidence of any expenses, appellee contends the original license tax is invalid. Appellee's reliance on *City of Tucson v. Stewart*, 45 Ariz. 36, 40 P.2d 72 (1935) and *McCarthy v. City of Tucson*, 26 Ariz. 311, 225 P. 329 (1924), is missplaced. *City of Tucson v. Stewart*, supra, involved a city ordinance enacted pursuant to the city's police power, which required an applicant for an electrical contractor's license to pay a license fee and be subjected to testing by a board of electrical examiners to determine whether he had sufficient knowledge to supervise the installation of electrical equipment under the ordinance and under the electrical code of the City of Tucson. The court recognized that if a fee or tax is imposed in the exercise of a police power for purposes of regulation that, as a general principle, the amount which may be exacted may include, and must be limited and reasonably measured by, the necessary or probable expenses of issuing the license, and of such inspection, regulation and supervision as may be lawful and necessary. The court further recognized that if the amount imposed as a license fee or tax is out of proportion to the expenses involved it will generally be regarded as a revenue measure and void as an unreasonable regulation under the police power. The court further held that it was clear that the ordinance passed in *Stewart* was a valid exercise of the police power and not a revenue measure.

*McCarthy* involved a city ordinance licensing and regulating every kind of business, profession and occupation. McCarthy was a lawyer who contended that the ordinance was merely a police regulation and therefore could not include the right to subject those engaged in any occupation to the payment of a license tax for the purpose of raising revenue. The supreme court held that the ordinance in question, as far as it dealt with attorneys, was clearly a revenue measure and not a police regulation since it did not undertake to supervise or regulate the practice of law in any manner. Furthermore, the court held that it was a valid license tax.

Here, Ordinance No. 4725, the ordinance which imposed the original occupational license tax, was clearly an exercise of the power to raise revenue and not regulatory in any manner. Appellee points to the fact that when he met with the mayor concerning the original ordinance, the mayor told him that the purpose of the ordinance was to regulate swap meets. Appellee also relies on Ordinance No. 4724, which contained a new Article VIII comprised of Sec. 7–201 through 7–205 to be added to Chapter Two of the Tucson Code. This article, enacted in conjunction with the taxing ordinance, governs swap meets. Appellee points to Sec. 4 of Sec. 7–205 which states:

> "WHEREAS, it is necessary for the preservation of the *peace, health and safety* of the City of Tucson that this ordinance become immediately effective, an emergency is hereby declared to exist, and this ordinance shall be effective immediately upon its passage and adoption." (Emphasis added)

Appellee contends the emphasized part of Sec. 4 shows that the ordinance was enacted pursuant to the police power and therefore the entire Ordinance No. 4724, read in conjunction with No. 4725 and in conjunction with the remarks made by the mayor, demonstrate that No. 4725 was enacted pursuant to the police power and was not a revenue measure. We do not agree. Ordinance No. 4724, when read in its entirety, reveals that its main purpose is to provide a means of collecting the tax from the proprietor, or as appellant states, to create "an audit trail." The emergency clause in Sec. 4 of Sec. 7–205 does not detract from the revenue raising purpose

of these ordinances. Nor can the remarks of the mayor change an exercise of the power to raise revenue into an exercise of the police power.

In sum, the trial court's invalidation of the original tax ordinance was erroneous.

In its cross-appeal, appellee makes the same regulatory vs. revenue raising argument as to the amended ordinance as it made to the original one. For the reasons which we have already set forth, this argument is without merit. Appellee makes two other challenges to the new ordinance. First, since it was established at trial that the purpose of imposing the occupational license tax on swap meet proprietors was to recoup lost revenue due to the inability or failure to collect taxes from the swap meet vendors, the tax is in reality a sales tax and it must be limited to the amount governing sale taxes in Chapter 4, Sec. 2 of the City Charter, the amount of 2 per cent of the gross sales.

Its other argument is that the competitive market for the swap meet is other retail merchants as well as garage sales, peddlers and so forth, and that within this competitive market only swap meet proprietors must pay a tax in the amount of 4 per cent of gross sales. Therefore, appellee argues that the occupational license tax on swap meet proprietors is violative of the equal protection clause of the Fourteenth Amendment. We are unable to agree with either of these contentions.

■ Appellee's argument that the license tax must be the same rate as the sales tax is without merit. There is no constitutional requirement of equality between license tax and sales taxes even though both are imposed for the purposes of raising revenue. Article IX, Sec. 1 of the Arizona Constitution, requiring uniformity of taxation, applies only to property taxes.

In *Kaufman v. City of Tucson*, supra, we stated:

"Classifications embodied in municipal licensing legislation must be based upon intrinsic, natural and reasonable distinctions germane to the police or revenue purpose of the law. The difference between the subjects need not be great; and if any reasonable distinction can be found to exist, the classification imposed by the licensing laws will be sustained. The classifications may reasonably distinguish between business or trades or between different methods of conducting the same general character of business or trade. ... *Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation.* The Supreme Court has repeatedly held that the inequality which results from the singling out of one particular class for taxation or exemption infringes no constitutional limitation. [citation omitted.]

* * * If no abuse appears, and especially in doubtful cases, courts will not interfere with a licensing classification." (Emphasis in original) 6 Ariz.App. at 432, 433 P.2d 282.

■ Appellee, who is exempt by the city code from paying the 2 per cent sales tax since it is paying an occupational license tax, argues that it should not be treated any differently from retail merchants, peddlers and garage sales vendors, all of whom are competitors and some of whom pay only the city sales tax.[2] We do not agree. When a legislative classification is questioned, and there are facts which reasonably can be conceived that would sustain it, their existence is presumed, and the burden of showing arbitrary action rests upon the one who assails the classification. *Clark v. City of San Pablo*, 270 Cal.App.2d 121, 75 Cal.Rptr. 726 (1969).

■ We note that there is a vast difference between a swap meet operator and a retail merchant, peddler or garage sale vendor. The swap meet operator is not in the business of retailing merchandise as

---

**2.** A casual garage sale is not subject to the city sales tax. See Article II, Division One, Sec.

19–39(1) of the Tucson Code.

are the others. He is, essentially, a provider of space.

Classifications may be based upon size and volume of business done by the occupation to be taxed, the method of doing business and the burden placed upon the community, and the consideration that small operators have little or no commercial significance and that their inclusion would unduly enhance the administrative problems of collecting the tax. *Clark v. City of San Pablo,* supra. The city council may well have recognized the lower overhead of the swap meet vendor as compared to the retail merchant, the burden imposed on the community by swap meets with respect to street use, congestion, health and safety, and the size of appellee's "competitors" in deciding to impose a 4 per cent gross receipt tax upon swap meet operators. The trial court did not err in holding the amended ordinance to be valid.

That part of the judgment holding the license fee ordinance as originally enacted arbitrary and confiscatory and awarding appellee judgment in the sum of $14,252 is vacated and set aside, as is the award to appellee of costs in the sum of $306.05. The balance of the judgment is affirmed, and appellant is awarded its costs incurred in the trial court.

BIRDSALL, J., concurs.

HATHAWAY, Judge, dissenting in part and concurring in part.

The majority concludes that the trial court's invalidation of the original tax ordinance was erroneous because they find it based on speculation. I respectfully disagree. I concur in their affirmance of the trial court's holding the amended ordinance constitutional.

Mr. Weaver, vice-president of the Tanque Verde Swap Meet, testified to his extensive background in the swap meet business and disclosed that the net income for the business at a point of maximized profits was 3% after income taxes. When imposition of the tax (in effect approximately 18.2% of the charges for the sites) was publicized, the vendors "were leaving." He surveyed them and they refused to assume the tax. The business attempted to absorb it and sustained heavy losses. The trial court's conclusions are also supported by testimony from the CPA and Dr. Buehler, the economist. I suggest that the majority has undertaken to weigh the evidence rather than view it in the light most favorable to sustaining the judgment. I would affirm.