610 P.2d 471

**J. C. PENNEY COMPANY, INC., a Delaware Corporation, Appellant,**

v.

**ARIZONA DEPARTMENT OF REVENUE, and Great Northern Investment Company, a co-partnership, Appellees.**

**No. 1 CA–CIV 4156.**

Court of Appeals of Arizona, Division 1, Department B.

April 10, 1980.

Brown & Bain, P. A. by Neil S. Cumsky and Giora Ben-Horin, Phoenix, for appellant.

John A. LaSota, Jr., Atty. Gen. by Ian A. MacPherson, Asst. Atty. Gen., Phoenix, for appellee Dept. of Revenue.

Snell & Wilmer by Robert C. Bates, Phoenix, for appellee Great Northern Inv. Co.

## OPINION

O'CONNOR, Judge.

Appellant, J. C. Penney Company, has appealed from the summary judgment granted to appellees by the trial court upholding the constitutionality of the Arizona rental occupancy tax, A.R.S. § 42–1701 to § 42–1729, and from the denial by the trial court of appellant's cross motion for summary judgment.

The parties stipulated to the relevant facts. Appellant, hereinafter referred to as "Penney", brought the action for recovery of $5.63 in Arizona rental occupancy tax and education excise tax paid under protest to appellee Arizona Department of Revenue, hereinafter referred to as "the Department." Penney had leased premises in Globe, Arizona, in 1955 from Main-Globe Corporation. Appellee, Great Northern Investment Company, hereinafter referred to as "Great Northern", is the successor in interest as landlord under the lease. The lease was not amended thereafter by the parties, and they stipulated that it was a "pre-existing lease" as that term is defined in A.R.S. § 42–1701(5). The Department and subsequently the Arizona State Board of Tax Appeals denied Penney's protest of the collection of the tax. Penney then filed this action in the Maricopa County Superior Court against the Department. Appellee Great Northern intervened in the action in Superior Court.

Appellant argues that the imposition of the rental occupancy and education excise taxes is in violation of the equal protection clauses of the fourteenth amendment to the United States Constitution and of article II, section 13 of the Arizona Constitution.

The Arizona rental occupancy tax became effective on January 1, 1975 (Laws 1974, Ch. 149, § 1), and is imposed by A.R.S. § 42–1711(A), which provides:

There is levied and shall be collected . . a tax upon every tenant of a pre-existing lease for the privilege of occupancy at a rate equal to two per cent of the rent for such occupancy.

A.R.S. § 42–1701(5) defines "pre-existing lease" as follows:

"Pre-existing lease" means any written lease or rental agreement entered into prior to December 1, 1967, except for the following:

(a) Any bilateral amendment of such written lease or rental agreement entered into subsequent to December 1, 1967, wherein the length of the term of the lease or the size of the premises leased is changed, or both.

As previously indicated, the parties stipulated that the lease in question is a "pre-existing" lease within the meaning of the statute and that the lease was not amended in respect to length of the term or size of the premises.

A.R.S. § 42–1712(2) also exempts from the application of the rental occupancy tax:

Occupancy under any pre-existing lease which the constitution or laws of the United States or this state would prohibit this state from taxing were the landlord to be the tenant.

Appellant contends that the quoted statutes are unconstitutional in that Penney is not afforded the exemption available to tenants whose lessors could not be subject to the taxes under the constitution or laws of the United States or Arizona if those lessors were the tenants. Appellant also contends the statutes are unconstitutional in that the tax is imposed on Penney based solely on the fact that Penney's lease was executed prior to December 1, 1967, and it was not subsequently amended. Penney further argues that the education excise tax imposed by A.R.S. § 42–1361 to § 42–1362 is invalid for the same reasons the rental occupancy tax is invalid. The education ex-

cise tax is imposed at a rate equal to 50% of the rental occupancy tax rate. A.R.S. § 42–1361(A)(3).

## LEGISLATIVE HISTORY

The legislative background of the taxes at issue is significant in resolving the issues raised. Arizona has had a transaction privilege tax since the enactment of the Excise Revenue Act of 1935. *Alvord v. State Tax Commission*, 69 Ariz. 287, 289, 213 P.2d 363, 364 (1950). It is an excise tax on the privilege of engaging in certain activities primarily involving retail sales of tangible personal property. *Tower Plaza Investments, Ltd. v. DeWitt*, 109 Ariz. 248, 250, 508 P.2d 324, 326 (1973), *appeal dismissed*, 414 U.S. 1118, 94 S.Ct. 853, 38 L.Ed.2d 746 (1974). In 1967, the Legislature amended the transaction privilege tax to add a 2% tax on the business of "leasing or renting for a consideration the use or occupancy of real property." A.R.S. § 42–1314(A)(3) [Laws 1967, Third Special Session, Ch. 3, § 1(a)(3)]. The amendment became effective December 1, 1967.

The legal incidence of the transaction privilege tax is on the seller, or in the case of leases, on the landlord, even though it may be passed on to the customer or tenant. *Tower Plaza Investments, Ltd. v. DeWitt*, 109 Ariz. at 250, 508 P.2d at 326. Landlords with leases which had been executed before the enactment of the transaction privilege tax on leases were unable to pass on the new tax to their tenants unless the leases contained an appropriate provision for such a "pass through." Apparently in recognition of the problem of such pre-existing leases, the Legislature exempted pre-existing leases from the transaction privilege tax until December 1, 1972. A.R.S. § 42–1314 B.

After the expiration of the moratorium on December 1, 1972, an action was filed to determine whether the imposition of the transaction privilege tax on pre-existing leases was unconstitutional. The Arizona Supreme Court upheld the constitutionality of the tax in *Tower Plaza Investments, Ltd. v. DeWitt*, 109 Ariz. at 254, 508 P.2d at 330.

In 1974 the Legislature passed the rental occupancy tax which is the subject of this appeal. The rental occupancy tax places the legal incidence of the tax on tenants rather than landlords, and it applies only to leases entered into prior to December 1, 1967. The Legislature also provided in A.R.S. § 42–1314 B that the transaction privilege tax on leases is not to be levied on income from leases on which the rental occupancy tax is paid.

## GENERAL PRINCIPLES

■ Article II, section 13 of the Arizona Constitution and the fourteenth amendment of the United States Constitution each contain clauses which guarantee to their citizens equal protection of the law. The Arizona Supreme Court has held that the "equal protection" clause of the Arizona Constitution and the fourteenth amendment are "for all practical purposes" equivalent. *Valley National Bank of Phoenix v. Glover*, 62 Ariz. 538, 554, 159 P.2d 292, 299 (1945). A classification for tax purposes must be reasonably related to the purpose of the tax statute. *F. S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920); *Gulf, C. & S. F. Ry. Co. v. Ellis*, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666 (1897).

■ The tax is presumed to be constitutional, and the court must be satisfied beyond a reasonable doubt that it is unconstitutional in order to so hold. *Shaw v. State*, 8 Ariz.App. 447, 447 P.2d 262 (1968). The appellant has the burden of overcoming the presumption that the classifications rest upon some reasonable basis and are not purely arbitrary. *Uhlmann v. Wren*, 97 Ariz. 366, 401 P.2d 113 (1965).

## THE CLASSIFICATION BASED ON EXEMPT STATUS OF LANDLORD

Appellant argues that the apparent purpose of the Legislature in classifying tenants under A.R.S. § 42–1712(2) based on whether the lessor would be exempt from direct taxation was to avoid an unconstitutional indirect taxation of immune sover-

eign governments. Appellant contends that the identity of the landlord exemption of the rental occupancy tax is not reasonably related to the legislative purpose of honoring the principle of sovereign immunity from taxation because the Legislature was mistaken in its belief that the tax in question would be tantamount to unconstitutional indirect taxation of governmental entities.

■ The state may not tax directly the federal government or any of its instrumentalities. *Kern-Limerick, Inc. v. Scurlock,* 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546 (1954); *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819); *Arizona State Tax Commission v. Garrett Corporation,* 79 Ariz. 389, 291 P.2d 208 (1955); *O'Neil v. Valley National Bank of Phoenix,* 58 Ariz. 539, 121 P.2d 646 (1942). The Arizona Constitution, art. 9, § 2, also exempts "from taxation all federal, state, county and municipal property." The state exemption refers only to property taxation, however, and not to excise taxes. *City of Phoenix v. Bowles,* 65 Ariz. 315, 180 P.2d 222 (1947).

■ It is well established that a state may impose an excise tax on private persons doing business with a governmental entity even though the economic burden of the tax is shifted by contract to the tax-immune governmental entity. *Detroit v. Murray Corp.,* 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed.2d 441 (1958); *United States v. Township of Muskegon,* 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958); *United States v. Detroit,* 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958). Furthermore, it is presumed that the legislature is aware of the cases interpreting statutes. *Altamirano v. Industrial Commission,* 22 Ariz.App. 379, 527 P.2d 1096 (1974).

■■ If a rational basis for the rental occupancy tax can be conceived, the classification is not in violation of the equal protection clause. *State v. Levy's,* 119 Ariz. 191, 580 P.2d 329 (1978); *Flagstaff Vending Co. v. City of Flagstaff,* 118 Ariz. 556, 578 P.2d 985 (1978). In determining whether a rational basis for a particular tax can be conceived, an examination should be made of the entire tax structure into which it fits. *Phillips Chemical Co. v. Dumas Independent School District,* 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384 (1960); *Caskey Baking Co. v. Virginia,* 313 U.S. 117, 61 S.Ct. 881, 85 L.Ed. 1223 (1941).

■ The transaction privilege tax on rental income cannot be and is not imposed on those leases in which the lessor is a tax-immune governmental entity. In order to achieve equality between the application of the transaction privilege tax on rental income and the application of the rental occupancy tax on pre-existing leases, the legislature may have rationally determined to exempt from the rental occupancy tax those leases in which the landlord is a tax-immune entity. Thus, if Penney's landlord were a governmental entity, no excise tax would be imposed on the rental income under either the transaction privilege tax on rental income or the rental occupancy tax. Several cases have upheld the constitutionality of tax statutes which discriminate between tenants on the basis of different tax treatment of the lessor. *United States v. County of Fresno,* 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977); *United States v. Township of Muskegon,* 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958); *Ladd v. State Board of Equalization,* 31 Cal.App.3d 35, 106 Cal.Rptr. 885 (1973); *Sproul v. Gilbert,* 226 Or. 392, 359 P.2d 543 (1961). Cf. *John Tennant Memorial Homes, Inc. v. City of Pacific Grove,* 27 Cal.App.3d 372, 103 Cal.Rptr. 215 (1972) (where city tax on privilege of occupancy was held unconstitutional because occupants of taxable landlords were not required to pay the same or a similar tax); *Gowens v. City of Bakersfield,* 179 Cal.App.2d 282, 3 Cal.Rptr. 746 (1960) (holding invalid a rental tax on transient guests but exempting rents from lodging houses having less than five accommodations); *Kelly v. City of San Diego,* 63 Cal. App.2d 638, 147 P.2d 127 (1944) (where city tax on privilege of occupancy was held invalid for reasons similar to *John Tennant* case).

In the *County of Fresno* case, a California tax was upheld on possessory interests of federal employees in national forest housing supplied by the federal government. The possessory interest tax exempted all renters of real property whose landlord-owners were required to pay a property tax. In upholding the tax the United States Supreme Court stated:

> Although the tax is imposed by the appellee counties on renters of real property only if the owner is exempt from taxation—and consequently is not imposed on the vast majority of renters of real property in California—the tax is not for that reason discriminatory. In this respect this case is governed by *United States v. City of Detroit*, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958). There the City of Detroit imposed a use tax on those who used tax-exempt property owned by the United States. The tax was measured by the value of the property. With respect to nonexempt property a similar tax was imposed on the owner and none on the user. In answering an argument that the tax discriminated against those dealing with the Federal Government, the Court said:
>
> > 'As suggested before the legislature apparently was trying to equate the tax burden imposed on private enterprise using exempt property with that carried by similar businesses using taxed property. Those using exempt property are required to pay no greater tax than that placed on private owners *or passed on by them to their business lessees*.' Id., at 473–74, 78 S.Ct., at 478. (Emphasis added.)
>
> Similarly, here the State of California imposes a property tax on owners of non-exempt property which is 'passed on by them to their . . . lessees'.
>
> Consequently, the appellants who rent from the Forest Service are no worse off under California tax laws than those who work for private employers and rent houses in the private sector.

429 U.S. at 464–65, 97 S.Ct. at 706, 50 L.Ed.2d at 693–94.

It is our opinion that the Arizona Legislature intended the transaction privilege tax on rental income and the rental occupancy tax to be complementary. In order to maintain equality between the two taxes, the lease should be exempt from the rental occupancy tax when the lessor is a tax-immune entity inasmuch as the same lease would be exempt from the transaction privilege tax on rental income if the lessor were a tax-immune entity. There is a rational basis for the exemption from the rental occupancy tax on leases in which the lessor is a tax-immune entity when the entire structure and legislative history of the tax and the transaction privilege tax on rent are considered.

## THE CLASSIFICATION BASED ON "PRE-EXISTING" LEASES

Appellant Penney also asserts that the rental occupancy tax arbitrarily discriminates against tenants of "pre-existing" leases because it does not apply to leases entered into on and after December 1, 1967. Appellant notes that the legal incidence of the rental occupancy tax is on the lessee, whereas the legal incidence of the transaction privilege tax is on the lessor. The legal incidence of a tax becomes important only in determining whether a tax is improperly imposed on a tax-immune entity. It is not the test applied in determining whether unconstitutional tax classifications are created. *See City of Tempe v. Del E. Webb Corp.*, 13 Ariz.App. 597, 480 P.2d 18 (1971); *Lane v. Lewis*, 81 Ariz. 28, 299 P.2d 198 (1956). The test, as discussed earlier, is whether the tax classification is reasonably related to the purpose of the tax statute. *F. S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920); *Gulf, C. & S. F. Ry. Co. v. Ellis*, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666 (1897).

Where a separate tax is imposed on a particular class in order to achieve substantial equality with another tax, the classification is upheld as a rational one. *See United States v. County of Fresno*, 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977); *United States v. Township of Muskegon*, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958); *United States v. Detroit*, 355

U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958). It is true that an exact equality of the economic burden is not achieved by the rental occupancy tax and the transaction privilege tax on rents. Some lessors with post-1967 leases may not in fact pass the transaction privilege tax on to their lessees. In addition, some lessors of pre-existing leases may in fact have provisions in their leases to pass on any excise tax imposed on the lessor. However, a classification is not violative of the equal protection clause merely because it is not made with mathematical nicety or because some inequality results. *Uhlmann v. Wren*, 97 Ariz. 366, 401 P.2d 113 (1965); *W. J. Sandberg Co. v. Iowa State Board of Assessment and Review*, 225 Iowa 103, 278 N.W. 643 (1938), *modified on other grounds*, 281 N.W. 197; *Hooten v. Carson*, 186 Tenn. 282, 209 S.W.2d 273 (1948). As stated by the court in *W. J. Sandberg Co.*, 278 N.W. at 646:

> Laws relating to taxation, as well as all other laws of a general nature, must have a uniform operation to meet the requirements of constitutional provisions. However, courts have long since recognized that, in the matter of taxation, perfect uniformity, which in its last analysis means an equal distribution of the burdens of taxation upon all persons of a given class, is impossible of perfect application. [citations omitted]. In so far as the uniformity rule relates to taxation, courts have quite uniformly held that they have no application to a so-called privilege tax or tax on business.

It is our opinion that the court may properly examine the entire excise tax structure relative to rental income in order to determine whether the classification made in the rental occupancy tax and its companion educational excise tax is based on differences reasonably related to the legislative purpose. The relation between the rental occupancy tax on lessees of pre-existing leases and the transaction privilege tax on lessors of leases after December 1, 1967, is analogous to the relation between the transaction privilege tax on sales of merchandise, the legal incidence of which is on the seller, and the use tax on purchasers of merchandise, the incidence of which is on the buyer.[1] It is a matter of economic reality that both the transaction privilege tax on sales and on rents normally is passed on to the buyer or lessee as the case may be. As stated in *Ladd v. State Board of Equalization*, 31 Cal.App.3d 35, 39, 106 Cal.Rptr. 885, 888 (1973), "the tax is economically a direct item of cost which must be passed on to the lessee if the lessor is to profit from the transaction." The fact that the legislature might have chosen to equalize the economic burden occurring by virtue of pre-existing leases by different and simpler methods does not require a finding that the method chosen by the legislature is arbitrary and invalid.

The judgment of the trial court is affirmed.

EUBANK, P. J., and HAIRE, J., concur.

---

1. A.R.S. §§ 42–1401 through 42 1425.