**SUBLETTE COUNTY SCHOOL DISTRICT NO. 1 and Bancroft Construction, Appellants (Plaintiffs),**

v.

**STATE BOARD OF EQUALIZATION, STATE OF WYOMING, Appellee (Defendant).**

**No. 88–144.**

Supreme Court of Wyoming.

March 6, 1989.

Gerald R. Mason of Mason & Twichell, P.C., Pinedale, for appellants.

Joseph B. Meyer, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., Michael L. Hubbard, and Robert J. Walters, Asst. Attys. Gen., Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

This appeal challenges the state's imposition of a sales or use tax upon contractors who both provide and install materials under construction contracts with political subdivisions of the State of Wyoming. Sublette County School District No. 1 (school district) asserts that taxing those contractors effectively imposes a tax upon the governmental entity in contravention of both legislative intent and constitutional provisions granting tax-exempt status to the governmental entity. The trial court denied the school district declaratory and injunctive relief, granting a summary judg-

ment in favor of the State Board of Equalization (Board).

We affirm.

In late summer, 1985, the school district began a nearly $10 million project for the construction on school district land of a new elementary school, a new gymnasium and cafeteria complex, and a new auditorium. Using a construction management arrangement,[1] the school district contracted on August 8, 1985, with Dixon–Watson Associates, Inc.,[2] to be the project's construction manager with responsibilities to oversee construction and protect the school district's interests by coordinating and scheduling the various subcontractors' supplying of construction materials and actual constructing of the facilities.

Pursuant to that construction management agreement and on behalf of the school district, Dixon–Watson invited bids on the project, advising bidders to exclude Wyoming sales and use taxes from their estimates of construction material costs. That advice conformed to the school district's interpretation of W.S. 39-6-405 and 39-6-505 (May 1985 Repl.), which exempt from sales and use taxes all purchases made by the state or any of its subdivisions.[3]

Based on their submitted bidding forms, on which they were required to separate bids regarding materials from bids relating to labor and installation, certain contractors were awarded contracts to supply only materials. The remaining contractors, including Bancroft Construction, were awarded contracts for both materials and installation of those materials. Consistent with the instructions of Dixon–Watson, none of the bids for materials included an allowance for sales or use tax. The school district paid contractors who were providing both materials and installation according to periodic billings that included separate charges for installation services and material purchases.

On June 13, 1986, the school district contacted the Board regarding the tax responsibilities of the various contractors on the project. The Board responded on June 26, 1986, and informed the school district that contractors supplying only materials or only labor were exempt from sales or use taxes. However, the Board asserted that those contractors who were supplying materials and who had also contracted to install those materials were liable for those taxes in accordance with W.S. 39-6-601 and 39-6-602 (May 1985 Repl.).[4]

1. Under the construction management arrangement, the school district, as owner, is like a prime contractor who directly subcontracts with third parties for both supplying of construction materials and performing of actual construction.

2. Dixon–Watson Associates, Inc., was also retained by separate agreement on August 8, 1985, to be the project architect.

3. W.S. 39-6-405 provides, in pertinent part:
(a) The following sales or leases are exempt from the excise tax imposed by this article:
　　*　　*　　*　　*　　*　　*
(xi) Sales to the state of Wyoming or its political subdivisions;
　　*　　*　　*　　*　　*　　*
(xv) Sales which the state of Wyoming is prohibited from taxing under the laws or constitutions of the United States or Wyoming.
W.S. 39-6-505 provides, in pertinent part:
(a) The following purchases or leases are exempt from the excise tax imposed by this article:
　　*　　*　　*　　*　　*　　*
(iii) Purchases which the state of Wyoming is prohibited from taxing under the laws or

constitutions of the United States or Wyoming;
　　*　　*　　*　　*　　*　　*
(v) Purchases made by the state of Wyoming or its political subdivisions.

4. W.S. 39-6-601 provides, in pertinent part:
(a) As used in this article:
(i) "Contractor" means any general or prime contractor or subcontractor;
(ii) "General or prime contractor" means:
(A) Any person who agrees with the owner or lessee of real property in this state to perform services or furnish materials and services for the construction, alteration, improvement or repair of real property in this state;
　　*　　*　　*　　*　　*　　*
(vi) "Subcontractor" means any person who agrees with another contractor to perform any part of that contractor's obligation for furnishing services or furnishing materials and services for the construction, alteration, improvement or repair of real property in this state.
W.S. 39-6-602 provides, in pertinent part:
(a) Any contractor who furnishes tangible personal property under contract or in the

The school district determined that it was obligated by its contractual covenants of good faith and fair dealing to allow change orders to affected contractors to compensate them for this unexpected tax liability. The ultimate cost to the school district was about $146,000. The school district brought suit to recover the additional funds expended and for declaratory and injunctive relief on October 9, 1986, arguing that it bore the ultimate economic burden of a tax upon its contractors and alleging that such a burden was inconsistent with its constitutional and statutory status as a tax exempt political subdivision of the state. The school district and the Board filed cross motions for summary judgment concerning the question of law raised by the school district and stipulated that no genuine issue of material fact remained for the trial court to decide.

The trial court observed that property purchases by governmental subdivisions, such as the school district, had been both constitutionally and statutorily exempted from taxation. It also recognized that statutory provisions taxing government contractors who also provide labor on the property sold appeared inconsistent with those exemptions. The trial court resolved this apparent ambiguity by determining that the constitution and statutes only prohibited the imposition of a legal liability upon governmental entities for the direct payment of a tax. They did not, however, prohibit the imposition of such liability upon third parties who might pass the economic burden of the tax to those who deal with them. Thus, the trial court determined that the legal incidence of a tax represents an obligation or liability of the taxpayer which is rationally distinct from merely carrying the economic burden of that tax. The court then denied the school district's summary judgment motion and granted summary judgment for the Board.

The school district argues on appeal that, notwithstanding the rationality of the Board's position, it fails to conform with the legislative intent of the sales and use tax statutes. The school district further argues the rationality of that position is not determinative of whether the challenged tax is unconstitutional. If the school district is correct in its first contention, we need not reach its constitutional challenge. Therefore, we first address the structure of the sales and use tax statutes and the parties' respective positions regarding the proper construction of those statutes.

Purchasers who, within Wyoming, take title to or the possession of tangible personal property, for their use and not for subsequent resale, owe sales tax on that transaction. W.S. 39–6–404(a)(i) (May 1985 Repl.) (a purchaser is responsible for tax on retail sales); W.S. 39–6–402(a)(ii) and (iii) (May 1985 Repl.) (defining "retail sale" and "sale"). A transaction contemplated by the Selective Sales Tax Act of 1937 requires the involvement of a vendor licensed to conduct business within Wyoming. W.S. 39–6–403(a) (May 1985 Repl.) (requiring every vendor to obtain a license); W.S. 39–6–402(a)(ix) (May 1985 Repl.) (defining "vendor").

Wyoming's Use Tax Act of 1937 was intended as a complement to the sales tax. *County of Natrona v. Casper Air Service*, 536 P.2d 142, 146 (Wyo.1975). While the use tax, like our sales tax, does not apply to purchases for subsequent resale, it does apply to certain retail sales not covered by the sales tax statutes. W.S. 39–6–505(a)(i) (May 1985 Repl.) (exempting transactions taxable under sales tax statutes); W.S. 39–6–504(b) and (c) (May 1985 Repl.) (use tax liability for storing, using, or consuming tangible personal property except where purchased for resale). The use tax applies to sales resulting in a "use" in Wyoming, regardless of whether title or possession transferred elsewhere and regardless of whether the vendor was doing business in Wyoming. Inherent in both taxes, however, is the notion that tax liability lies with the purchaser who enjoys the benefits of ownership, possession, or use of the purchased property.

development of real property is the consumer or user of the tangible personal property with-

in the meaning of the sales and use tax laws of Wyoming.

As previously noted, an exception to this scheme has been created by exempting governmental entities from tax liability where those entities are the final users of the purchased property. The school district argues that as a tax-exempt final user of construction materials supplied by contractor "A" and installed by contractor "B", it is likewise a tax-exempt final user of construction materials supplied by contractor "C", even though those materials were installed pursuant to its independent labor contract with "C". That is, the school district asserts that the legislature intended its exempt status to be a specific exception to the general tax liability of purchasers and final users under the sales and use tax statutes. Conversely, the Board contends the taxing of contractors who install the materials they have provided should be viewed as a specific exception to the general tax-exemption for governmental entities.

From the viewpoint of public policy, both positions exhibit merits which the legislature might have found compelling. The school district's position regarding the uniform treatment of government purchases makes a great deal of sense when one considers that, as recipients of state revenues, these entities are now required, in effect, to pass a significant part of their funding back into the state's general coffers. We cannot say, however, that such a facially illogical process serves no purpose in the legislature's efforts to finance statewide capital improvements and service the debts thereby created.

On the other hand, the Board's position sensibly differentiates between a retailer whose profit depends solely on purchases for resale and a contractor whose profit depends both on the resale of material and his use of that material. We will not seek to justify the Board's position by saying that the "use" component of the contractor's dual profit-making activity is his primary function. Rather, we note that the legislature may have considered potential problems with permitting a contractor to control the billing of those separate activities while holding his client primarily liable for the tax on those activities. For instance, the contractor may bill his labor costs as a cost of materials and increase the tax on materials accordingly, while failing to remit the collected tax to the state. His client, who will undoubtedly pay the increase, has no means of determining that he has overpaid and no means of determining whether the tax was paid to the state. To hold that client liable for the tax in such circumstances would be patently unfair. The legislature might have decided that the secondary tax liability of the contractor/vendor gave the Board insufficient control over such conduct. By deeming the contractor the final user, however, tax liability would be placed on both the contractor and his vendor. Any failure of the contractor to remit tax payments would then adversely affect the vendor on whom he depends, tending to further prevent such misconduct.

Both parties, therefore, offer a reasonable resolution of the ambiguity which the trial court found to exist in the use tax statutes. Neither party, however, has clearly established the legislature's intended resolution of that ambiguity. The only evidence of legislative intent presented to the trial court was the inaction of the legislature in the face of an Attorney General's opinion and the Board's own rules, both of which had long advanced the Board's position. Some further indication of legislative intent would undoubtedly aid our evaluation of the correctness of either party's position. "[C]ourts may try to determine legislative intent by looking at the legislative history of a statute." *State v. Stovall*, 648 P.2d 543, 546 (Wyo.1982). Though not often the case in Wyoming, the legislative history of these apparently conflicting statutes sufficiently demonstrates the legislative intent, if not the legislative purpose, relating to these statutes.

Wyoming's Selective Sales Tax Act of 1937 exempted from that tax all not-for-resale sales to political subdivisions of the state. W.S. 39–292 (1957). That exemption survives today as W.S. 39–6–405 (May 1985 Repl.). Similarly, provisions of W.S. 39–312 (1957), specifically exempted from use tax all property used in performing

public works contracts prior to April 1, 1935, thereby implying that the tax would apply in such cases after that date. *Morrison–Knudson Co., Inc. v. State Board of Equalization,* 58 Wyo. 500, 135 P.2d 927, 932 (1943). No comparable provision exists in today's statutes. Instead, 1963 Wyo. Sess.Laws, Ch. 183, imposed a use tax upon all contractors, whether they provided labor or materials or both, while deleting that portion of § 39–312 that implied the nonexempt status of public works contractors.[5] To this point in our analysis it is uncertain whether the legislature intended by that act to reestablish an exemption for public works contractors, or whether it instead intended to more clearly establish the tax liability of all contractors.

That uncertainty vanishes upon examining the process by which 1981 Wyo.Sess. Laws, Ch. 57 § 1, came into being.[6] That act was originally introduced as House Bill 431. After the first reading of that bill an attempt was made in committee to amend it, making construction contractors the purchasing agents of those governmental entities with whom they had contracted, and thereby eliminating those contractors' liability for sales and use taxes. The proposed amendment died in committee and was returned to the full House in its original form. The Bill was then passed without substantial change. House Journal 406–407 (1981). Thus, it is clear that the Legislature intended no exemption to apply to contractors who supply both labor and materials to exempt political subdivisions of the state. The trial court properly accepted the statutory construction advanced by the Board.

■ Though the legislature clearly intended to tax such contractors, the question remains whether it had the power to thereby place an indirect tax burden upon a governmental entity apparently exempted from that burden by the Wyoming Constitution. The school district argues that, regardless of whether construction materials have been purchased from a mere supplier or from a supplier who also installs those materials, such materials become the property of the school district. Since that property was to be used primarily for a governmental purpose, the school district asserts, it is exempt from taxation under Wyo. Const. art. 15, § 12.[7]

The Board argues that the constitutional provision does not apply because the materials are not school district property. The Board reaches this conclusion by asserting that an installation contractor does not actually purchase those materials for resale, and that the contractor is the final owner, user, and consumer of those materials, *as materials.* Citing authority from other jurisdictions to support this contention, the Board would have us follow decisions which distinguish materials that become fixtures from materials which are attached to realty with less permanence. In the former instance, the material remains the property of the contractor; only the completed structure becomes the property of his client. In the latter instance, ownership transfers immediately. We observe that such a distinction has arisen only under statutory schemes which differ substantially from that of Wyoming's, and we decline to adopt the distinction here.

The trial court appears to have ignored this aspect of the Board's argument, concentrating instead on the Board's alternative assertion that excise taxes such as sales and use taxes are levied against something other than property, thereby rendering the constitutional provision inapplicable. The trial court found support for

---

5. The general tax exemption for sales to political subdivisions of the state remained a part of § 39–312 despite the deletion of the "public works" clause.

6. That act, in establishing the present form of W.S. 39–6–601 and 602, amended prior statutes by imposing use tax liability only on those contractors who provide both labor and materials.

7. Art. 15, § 12 provides:

The property of the United States, the state, counties, cities, towns, school districts and municipal corporations, when used primarily for a governmental purpose, and public libraries, lots with the buildings thereon used exclusively for religious worship, church parsonages, church schools and public cemeteries, shall be exempt from taxation, and such other property as the legislature may by general law provide.

that position in *United States v. New Mexico*, 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982). In that case, the Court discussed the particular characteristic of excise taxes which permitted a state to tax materials used on federal construction projects, notwithstanding the tax immunity enjoyed by federal property under the Supremacy Clause. The Court held that contractors on those projects may be subjected to state sales and use taxes even though they purchase material for the United States in such a manner that title to the property vests immediately in the federal government. Likewise, the government's title to the final product constructed does not preclude taxing the contractor for the materials used in that construction. Such was the case, the Court explained, because excise taxes do not tax the *ownership* of property; rather, they tax the contractor's *use* of the property in connection with his commercial, profit-making activities, an independently taxable activity apart from ownership. 455 U.S. at 734–35, 102 S.Ct. at 1382–83, 71 L.Ed.2d at 591–92. The Arizona Court of Appeals, in *J.C. Penney Co. v. Arizona Dept. of Revenue*, 125 Ariz. 469, 610 P.2d 471 (1980), similarly upheld an excise tax imposed upon private parties, though the eventual burden of those taxes fell upon the state. In that case, a state constitutional provision, similar to Wyoming's, created a tax exemption for property of the state and its political subdivisions. The resulting tax imposition was constitutionally permissible, that court held, because the constitutional exemption referred only to property taxes and not excise taxes. Id. 610 P.2d at 475.

Our prior decisions, though they fail to explicitly adopt the reasoning of these cases, imply our agreement with that reasoning. While admitting that Wyoming cannot collect sales and use taxes from the United States, it is well-established that contractors on federal construction projects in this state are nevertheless subject to such taxes. *United Pacific Insurance Co. v. Wyoming Excise Tax Division, Department of Revenue and Taxation*, 713 P.2d 217, 221–22 (Wyo.1986). Although the application of our state constitution was not at issue in that case, we note that the

property of both Wyoming and the United States is exempted from taxation by Wyo. Const. art. 15, § 12. If we were now to hold that contractors on state construction projects are constitutionally exempt from taxation, contractors on federal projects must enjoy a similar benefit. However, the "well-established" principles referred to in *United Pacific* were not advanced without regard for their legitimacy under the Wyoming Constitution. Implicit in our disposition of that case was our long-established understanding that "[t]axes * * * on the privilege of doing business, are to be distinguished from property taxes, and * * * constitutional restrictions on property taxes are ordinarily inapplicable * * *." *City of Sheridan v. Litman*, 32 Wyo. 14, 228 P. 628, 630–31 (1924).

The plain language of Wyo. Const. art. 15, § 12, limits its applicability to property taxes. The tax at issue here is clearly an excise tax upon a taxpayer's profit-making activities. Although the Board cannot destroy the school district's statutory exemption from sales and use tax by imposing upon the school district the legal liability for direct payment of such taxes, it may impose that liability on a nonexempt entity. That is exactly what has occurred. We hold the actions of the Board to be consistent with legislative intent and the Wyoming Constitution.

AFFIRMED.