MEMORIAL HOSPITAL OF LARAMIE
COUNTY, Appellant (Plaintiff),

v.

DEPARTMENT OF REVENUE AND
TAXATION, STATE OF WYOMING,
Appellee (Defendant).

No. 90–1.

Supreme Court of Wyoming.

Jan. 24, 1991.

W. Perry Dray and Niki Esmay Heller, Dray, Madison & Thomson, P.C., for appellant.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

THOMAS, Justice.

In *Sublette County School District No. 1 v. State Board of Equalization*, 770 P.2d 218 (Wyo.1989), this court held that the exemptions from the sales tax set forth in § 39–6–405, W.S.1977 (May 1985 Repl.),[1] and the use tax set forth in § 39–6–505, W.S.1977 (May 1985 Repl.),[2] were not avail-

---

1. Section 39–6–405, W.S.1977 (May 1985 Repl.), states, in pertinent part:

 "(a) The following sales or leases are exempt from the excise tax imposed by this article:

 \* \* \* \* \* \*

 "(xi) Sales to the state of Wyoming or its political subdivisions; \* \* \*."

2. Section 39–6–505, W.S.1977 (May 1985 Repl.), states, in pertinent part:

 "(a) The following purchases or leases are exempt from the excise tax imposed by this article:

 \* \* \* \* \* \*

 "(iii) Purchases which the state of Wyoming is prohibited from taxing under the laws or constitutions of the United States or Wyoming;

 \* \* \* \* \* \*

 "(v) Purchases made by the state of Wyoming or its political subdivisions; \* \* \*."

able in an instance in which a contractor who had supplied the materials upon which the tax was assessed also had contracted to install those materials and that § 39–6–602(a), W.S.1977 (May 1985 Repl.),[3] made that contractor subject to the sales tax as a "consumer or user" of the tangible personal property. The issue in this case is whether the rule pronounced in *Sublette* should apply to require the payment of sales taxes by a contractor in an instance in which the contractor sold the materials directly to a tax exempt institution, Memorial Hospital of Laramie County (Memorial), and then installed those materials pursuant to a separate contract for labor services made between the contractor and a contract manager employed by Memorial to oversee the project. The district court ruled that whenever the installation of materials in a construction project is actually accomplished by the same firm that supplied the materials, the sales tax for the materials must be paid by the contractor that installed them. The court held that this rule pertains even though those materials were sold directly to the tax exempt institution, Memorial in this instance, and the contract for labor was entered into between the seller and the contract manager for Memorial. In effect, the district court treated the contract manager as the agent of Memorial and concluded that the situation was not distinguishable from *Sublette* with respect to imposition of the sales tax. We agree with the ruling of the district court, and we affirm its judgment in favor of the Department of Revenue and Taxation of the State of Wyoming.

In its Brief of Appellant, Memorial presents the questions in this way:

"1. Whether *Sublette County School District No. 1 v. State Board of Equalization*, 770 P.2d [218] 223 (Wyo.1989), controls the disposition of this case.

"2. Whether materials and supplies purchased by Memorial Hospital of Laramie County (a political subdivision of the State of Wyoming) from vendors who eventually installed those same materials and supplies pursuant to a separate labor and services contract with a Construction Manager, are exempt from taxation under the Sales and Use Tax laws of the State of Wyoming, as a sale to and a purchase by a political subdivision of the State of Wyoming."

The Department of Revenue and Taxation of the State of Wyoming (Department) consolidates the question in the following statement of the issues:

"Is a contractor who furnishes materials and services in the development of real property exempt from Wyoming sales or use taxes on its purchase of the materials because the materials are furnished to the owner through a separate contract?"

This case was before this court in a previous appeal on the question of the jurisdiction of the district court to decide the controversy, and the essential facts are articulated in *Memorial Hospital of Laramie County v. Department of Revenue and Taxation of the State of Wyoming*, 770 P.2d 223, 224–25 (Wyo.1989):

"On March 12, 1986, the hospital entered into a construction management agreement with Fru–Con Construction Corporation to build an addition to its facilities. That agreement established certain procedures for letting bids and purchasing materials which were designed to avoid the costs of sales and use taxes on construction materials. The hospital believed such procedures were consistent with advice received through its previous communications with the department. Accordingly, during the bidding process the hospital and Fru–Con structured certain material acquisitions as direct purchases by the hospital. However, due to the broad authority granted Fru–Con to subcontract for labor on the project, three distinct situations were created with respect to contractors supplying materials: (1) some contractors supplied

---

**3.** Section 39–6–602, W.S.1977 (May 1985 Repl.), provides, in pertinent part:

"(a) Any contractor who furnishes tangible personal property under contract or in the development of real property is the consumer or user of the tangible personal property within the meaning of the sales and use tax laws of Wyoming."

only materials through a direct contract with the hospital; (2) others supplied both materials and labor through a single subcontract with Fru–Con; (3) still others supplied materials through a direct contract with the hospital while providing labor relating to those materials through a separate labor subcontract with Fru–Con. The hospital advised suppliers in the third class that such transactions for materials were exempt from sales and use taxation. [Footnote omitted.]

"On January 25, 1988, the department notified one member of this class of suppliers, [Kelley] Company, Inc. ([Kelley]), that the materials it had supplied and installed were subject to taxation. The hospital subsequently paid the tax assessed against [Kelley] under protest. Before payment, however, the hospital filed a claim for injunctive and declaratory relief, alleging that its tax-exempt status precluded such a tax on property purchased for its own use. The hospital further alleged that it would be contractually required to reimburse all vendors situated similarly to [Kelley]. At a hearing on June 23, 1988, the trial court dismissed the hospital's suit for lack of subject matter jurisdiction, characterizing that suit as a challenge to the taxability of the individual suppliers, and indicating that such issues were more properly the province of the administrative agency."

In performing its obligations to Memorial in connection with the construction of the "Healthbuild 2000" project, Fru–Con was to "furnish efficient business administration and superintendence and to use its best efforts to complete the Project in an expeditious and economical manner consistent with the interest of the Owner." The intention of the parties was that Fru–Con, as construction manager, would obtain the services and supplies needed to complete the project and, in carrying out its responsibilities, would solicit bids from various contractors. In soliciting certain bids, Fru–Con requested the bidders to separate material costs and labor costs even though the bid would be submitted on a lump sum basis excluding sales or use taxes. Following submission of such a bid by Kelley, Kelley sold materials directly to Memorial pursuant to a contract made with Memorial. Later, it entered into a separate labor contract with Fru–Con to install those same materials. Because of the separate contracts with Memorial and Fru–Con, Memorial contends that the transaction is distinguishable from that found in *Sublette* and does not result in any tax liability to Kelley.

Before the construction project was commenced, Memorial attempted to resolve the tax question by consultation between its attorneys and the Department. The Department, referring to Chapter III, § 22(b), Rules and Regulations of the Wyoming State Tax Commission, explained that sales taxes could be avoided by a direct purchase by a tax-exempt entity. Chapter III, § 22, Rules and Regulations of the Wyoming State Tax Commission, provided:

"Section 22. *Materials and Supplies Sold to Owners, Contractors and Repairmen.*

"Sales of materials and supplies to be used in the construction and improvements to real property are taxable sales, whether sold to the owner or contractor.

"a. When a contractor enters into a contract to furnish the materials and services to construct or repair improvements to real property, sales tax on the materials shall be collected by the vendor.

"b. When materials to be used by a contractor in making improvements or repairs to real property are paid for directly by agencies of the federal government or the State of Wyoming and its political subdivisions, the purchases are exempt from sales tax."

The Department did not furnish any advice as to how those sales and purchases that are alluded to in Section 22(b) could, or should, be structured.

On July 3, 1985, the same day that the Department's letter explaining the application of Chapter III, § 22(b), Rules and Regulations of the Wyoming State Tax Commission, was mailed to Memorial's attorneys, the Wyoming State Tax Commission

adopted Chapter III, § 23(b), Rules and Regulations of the Wyoming State Tax Commission. That section was adopted as a replacement for Section 22 quoted above, and it provided:

"Section 23. *Materials and Supplies Sold to Owners, Contractors and Repairmen.*

"Sales of materials and supplies to be used in the construction of improvements to real property are taxable sales, whether sold to the owner or contractor.

"(a) When a contractor enters into a contract to furnish services or materials and services to construct, alter, improve or repair real property, he is the consumer of all equipment, material and supplies purchased to perform his contract and must pay sales or use tax to the vendor or directly to the Department.

"(b) Contractors performing for exempt entities, such as governmental entities and churches, are subject to the sales or use tax on all equipment, materials and supplies purchased by the contractor to perform their contract."

The Department did not advise Memorial of this change, and Memorial proceeded to follow its own interpretation of Section 22(b).

On January 25, 1988, the Department, invoking Chapter III, § 23(b), Rules and Regulations of the Wyoming State Tax Commission, issued a determination that Kelley, a subcontractor working on the "Healthbuild 2000" project, owed sales tax on the materials that it had purchased from a third party and had then sold to Memorial. The Department relied upon the installation of those materials for the benefit of Memorial pursuant to an agreement entered into between Fru–Con and Kelley. The tax assessment was based upon Kelley's cost and not upon the prices paid by Memorial. Memorial paid the tax on behalf of Kelley in accordance with its representation to its subcontractors that their materials purchases would be tax exempt. Memorial made the payment under protest,

however, and it also filed a complaint for declaratory judgment alleging that the Department's interpretation of the taxing statutes and of Chapter III, § 23(b), Rules and Regulations of the Wyoming State Tax Commission, was incorrect.

Initially, the district court dismissed the complaint for want of subject matter jurisdiction. When Memorial appealed the dismissal, this court held that the district court had jurisdiction to decide the case, and the case was remanded for further proceedings consistent with our holdings in *Sublette. Memorial.* After a trial on the merits, the district court ruled that the tax imposed on Kelley Company was valid, and it entered its judgment to that effect. Memorial now appeals that ruling.

 It is clear that when a contractor purchases materials and resells them to a tax-exempt institution, it is not required to pay sales or use taxes if the installation of those materials is performed by another contractor. Sections 39–6–405 and 39–6–505, W.S.1977 (May 1985 Repl.);[4] *Sublette; Memorial.* Memorial is a political subdivision of the state, and it is exempt from the payment of sales or use taxes. Sections 39–6–405(a)(xi) and 39–6–505(a)(v), W.S. 1977 (May 1985 Repl.); *Memorial.* In *Sublette*, we explained that the situation in which the contractor supplies materials to the institution and also contracts to install those materials is different, and the contractor is responsible for the payment of the taxes. *See* Section 39–6–602, W.S.1977 (May 1985 Repl.). Under those circumstances, the contractor is considered to be the user or consumer of the materials and owes the tax on the amount that it paid for them. Section 39–6–602, W.S.1977 (May 1985 Repl.), *Sublette.* In this instance, Kelley sold the materials to Memorial, and Kelley then installed them even though the installation was pursuant to a labor contract made with Fru–Con. The transaction is not distinguishable in substance from that found in *Sublette*, and Kelley is liable for sales or use taxes.

---

**4.** The pertinent statutory provisions found in the current statutes are not different from those set forth in the May 1985 Replacement in effect

when *Sublette County School District No. 1 v. State Board of Equalization,* 770 P.2d 218 (Wyo. 1989), was decided.

There is nothing in either the statutes or the cases interpreting those statutes that provides for a distinction in an instance in which the installation contract is not entered into directly or exclusively with the purchaser of the materials. Fru–Con was Memorial's construction manager, and we recognize that its role was that of an agent. We perceive its actions to be substantially the same as if they were accomplished directly by Memorial. *See Winkler v. Andrus,* 594 F.2d 775 (10th Cir.1979). In this regard, we attach significance to the stipulated facts quoted by the district court:

"10. The construction Manager (Fru–Con), in conjunction with MHLC's Administrator, reviewed the bids which were solicited in stages over a several month period.

"11. Bids for materials and for installation of materials were requested to be made on a 'lump sum' basis, although within the bid form, the bidder was requested to further separate bids for materials costs from bids for labor costs. The parties do not stipulate to a particular definition of 'lump sum.' Bidders corresponding to Bid Package # 6 were given the option to specify whether their bids were contingent on acceptance of both bids for cost of materials and cost of labor. Most bidders elected to require that both bids be accepted if either bid was accepted.

"12. MHLC, based upon the analysis and advice of Fru–Con, selected businesses from which to acquire materials."

The fact that materials that are sold are billed and received on one purchase order and the services for installation are billed on another purchase order, even when billed to an agent, as in this case, is of no substantial consequence to the tax burdens. The controlling factor is whether the contractor installs the materials that it sells. Memorial contends that the circumstances of this case are sufficiently distinguishable from those in *Sublette* as to make this case a discrete one and, as a result, the taxes assessed were imposed erroneously. We cannot agree with Memorial's arguments. The cases are not identi-cal but, in substance, they are much more alike than they are different. We do not choose to elevate the form of the transaction over the substance of the result by ruling otherwise.

This case and *Sublette* both involve a situation in which a contractor sold materials to a tax-exempt institution and later installed the same materials. These are the factors that are decisive. There is no legal significance to be attached to the arrangement by which the contractor sold the materials directly to the institution and then installed them under a separate services contract made with an agent of the institution. Certainly, those facts are not sufficient to distinguish the case from one in which the provision of the materials and the furnishing of labor is performed under one agreement.

Acceptance of the view of the law that Memorial asserts would negate the teachings of *Sublette* by providing a simple mechanism pursuant to which any contractor dealing with a tax-exempt entity could avoid sales or use taxes by simply contracting separately with an agent acting as a surrogate for the tax-exempt institution. That result is not consistent with the ruling of *Sublette,* and this case originally was remanded "for proceedings consistent with our decision in *Sublette * * *." Memorial,* 770 P.2d at 227. In light of the previous decisions in *Sublette* and *Memorial,* Memorial's second issue merges into the first, and no separate treatment of that issue is required.

We conclude that this case is, in fact, controlled by *Sublette,* and we hold that the Department's interpretation of the taxing statutes and of Chapter III, § 23(b), Rules and Regulations of the Wyoming State Tax Commission, is correct. The judgment of the district court ruling that sales and use taxes properly are imposed on Kelley Company, even though ultimately paid by Memorial, is affirmed.

URBIGKIT, C.J., filed a dissenting opinion.

URBIGKIT, Chief Justice, dissenting.

I respectfully disagree with the majority in declaration that our prior case of *Sublette County School Dist. No. 1 v. State Bd. of Equalization, State of Wyoming*, 770 P.2d 218 (Wyo.1989) controls resolution of this case.

I perceive that the state agency changed the taxation rules and this court misinterpreted the law in order to collect sales tax from the Memorial Hospital of Laramie County remodeling construction project. In result, we expect the users of the hospital to unnecessarily subsidize the state and other levels of government which receive some apportioned share of sales tax collections.[1] The legislature could place that burden on local units of government, like the county hospital here, but I perceive this court as the entity that creates the burden by statutory extension and factual misinterpretation. Additionally, I observe that the discriminatory results within the construction industry make no practical sense.[2]

In analysis of the State's taxation of the reconstruction of the county hospital as a county agency project, we start with the Wyoming Constitution, which provides:

The property of the United States, the state, counties, cities, towns, school districts and municipal corporations, when used primarily for a governmental purpose, and public libraries, lots with the buildings thereon used exclusively for religious worship, church parsonages, church schools and public cemeteries, shall be exempt from taxation, and such other property as the legislature may by general law provide.

Wyo.Const. art. 15, § 12.

In indicated compliance with the constitutional limitations, the legislature, in enactment of the sales and use tax statutes, provided the exceptions previously quoted in the majority opinion found in W.S. 39–6–405 and 39–6–505 which exclude application of sales and use taxes to purchases by the state or its political subdivisions. Neither the State nor this majority seem to doubt that the county hospital comes within the benefits of the constitution and the applicable statutes.

The trail now gets less defined and more muddied when we consider regulations adopted by the Wyoming Tax Commission upon which this court now apparently imposes state taxation on local governmental agency purchases for a hospital construction. At the time Memorial Hospital of Laramie County finalized its construction plans, after consultation with the Department of Revenue and Taxation personnel, there was a Tax Commission regulation which clearly validated the tax-free status of this transaction and provision:

Section 22. *Materials and Supplies Sold to Owners, Contractors and Repairmen.* Sales of materials and supplies to be used in the construction of improvements to real property are taxable sales, whether sold to the owner or contractor.

a. When a contractor enters into a contract to furnish the materials and services to construct or repair improvements to real property, sales tax on the materials shall be collected by the vendor.

b. When materials to be used by a contractor in making improvements or repairs to real property are paid for directly by agencies of the federal government or the State of Wyoming and its political subdivisions, the purchases are exempt from sales tax.

Rules and Regulations of the Wyoming State Tax Commission, ch. III, § 22 (1980).

That regulation was amended on the same day that Tax Commission personnel in correspondence approved this particular construction project operation. While vali-

---

**1.** The contract agreements with the contractors and subcontractors require the county hospital to repay any assessed sales or use tax cost which may be collectible because of this decision.

**2.** Although the amount claimed for tax in the Kelley sale of materials for the hospital con-

struction totaled only $764.99, the entire unexpected tax burden from this decision on the hospital construction project was estimated to total between $100,000 and $200,000. The exact sum does not appear to be stated in any documentation within this record.

dating the plan, the rules were, without notice to the county hospital then or later, changed to provide:

Section 23. *Materials and Supplies Sold to Owners, Contractors and Repairmen.* Sales of materials and supplies to be used in the construction of improvements to real property are taxable sales, whether sold to the owner or contractor.

(a) When a contractor enters into a contract to furnish services or materials and services to construct, alter, improve or repair real property, he is the consumer of all equipment, material and supplies purchased to perform his contract and must pay sales or use tax to the vendor or directly to the Department.

(b) Contractors performing for exempt entities, such as governmental entities and churches, are subject to the sale or use tax on all equipment, materials and supplies purchased by the contractor to perform their contract.

Rules and Regulations of the Wyoming State Tax Commission, ch. III, § 23 (1985).

The difference may not be obvious, but the result is astounding. It did not say so, but the materials purchased and then made available for installation by the tax-free governmental entity became taxable if used by an installing subcontractor who had previously sold the materials to the governmental agency. Tax practice renovation and recapitulation did not end there since the application finally established by the Tax Commission was that the materials purchased by the exempt entity came to be taxable only if the installer had sold the materials to the hospital. A vendor who did not do any labor on installation remained tax free and the installer who sold no materials also remained tax free. It was the dual functioning subcontractor-supplier where taxable incident arose.

In the meantime, Memorial Hospital of Laramie County had structured its $15 million reconstruction project in accord with the tax agency advice to save taxes and minimize costs. Simplistically, a management contract was executed with a construction manager, Fru–Con Construction Corp., to act as a general contractor for all labor while Memorial Hospital of Laramie County, as owner, would purchase all materials as a tax-exempt agency.

Out of this careful tax plan, worked out in conjunction with the advice from the Tax Commission personnel, a change engendered by an unnoticed rule provides the difficulties which followed. In taxation application for the project when a material supplier did not provide labor, there was no problem. Also, if the particular subcontractor did not sell construction materials for the construction, there was no problem. However, if the subcontractor sold materials to the county hospital and performed labor for Fru–Con Construction Corp., the cost value of the materials which had been purchased by the tax-exempt agency became taxable to the installation subcontractor.

This flight of logic and strangely configured taxation practice imposed the tax on multi-activity subcontractors but not entities that were functional either as suppliers or as labor providers. The justification of all of this now comes for this majority's decision through the *Sublette County School Dist. No. 1* case, which I consider to be clearly distinguishable. In *Sublette County School Dist. No. 1*, the multi-activity subcontractor had a dual function contract, each with the owner-governmental subdivision. The private construction entity contracted to supply materials to the governmental agency and to furnish installation and construction labor to the governmental agency. The dual functional contract, we then found, created a taxable status since the subcontractor used its own materials to comply with its contractor obligation, which essentially was a unitary responsibility as a material supplier and labor provider.

In this case, Memorial Hospital of Laramie County, in order to escape the *Sublette County School Dist. No. 1* pitfall, arranged for completely separate contracts—one for sale of materials to be exempt in status as a direct purchase by the governmental agency and the other to be undertaken was by a general contractor to pro-

vide labor. That general contractor, Fru–Con Construction Corp., arranged for subcontractors to provide labor in a fashion no different than if it had simply hired all individual laborers itself.

I cannot perceive how *Sublette County School Dist. No. 1* has any persuasive application to the more sophisticated arrangement undertaken by Memorial Hospital of Laramie County in this case. In first impedance, I cannot see how the material purchases by Memorial Hospital of Laramie County can be taxable under the Wyoming Constitution. Differentiating real estate taxes from excise taxes on personal property purchased to perform governmental functions cannot be anything but linguistic sophistry. The majority and I agree on this, although the majority rests with a statutory analysis of W.S. 39–6–405, 39–6–505, and 39–6–602, while I start with the state constitution itself.

In introduction, contrary to the State's contention in appellee's brief, I find that first the Tax Commission and now this majority actually rewrite the state taxation statute. *Matter of Voss' Adoption*, 550 P.2d 481, 485 (Wyo.1976); *Natrona County v. Casper Air Service*, 536 P.2d 142, 144 (Wyo.1975). By misinterpretation and misapplication, a sales-use tax has been converted into a labor related taxable incident as a *transaction tax* measured for amount by the value of the materials used, but only arbitrarily applied for application to a limited class of subcontractors. This Wisconsin application is not followed by precedent found in other jurisdictions. *See Wisconsin Dept. of Revenue v. Johnson and Johnson*, 130 Wis.2d 187, 387 N.W.2d 91 (1986); and *Rice Insulation, Inc. v. Wisconsin Dept. of Revenue*, 115 Wis.2d 513, 340 N.W.2d 556 (1983). For Wyoming, this expansive alteration of the clearly worded statute is improper. *Croxton v. Board of County Com'rs of Natrona County*, 644 P.2d 780 (Wyo.1982); *Department of Revenue and Taxation v. Irvine*, 589 P.2d 1295 (Wyo.1979).

I fail to gain any comfort from the middle-of-the-stream change by the Tax Commission of its rule adopted and effectuated without advice or notice as a justification for tax extension. If the purpose of the change was to reach governmental agency purchases of tangible personal property, it was void both in contravention of the constitution and in the absence of authority provided by state statute. Additionally, it was improper tax regulation and interim application. *Hercules Powder Co. v. State Bd. of Equalization*, 66 Wyo. 268, 208 P.2d 1096, *reh'g denied* 66 Wyo. 268, 210 P.2d 824 (1949); *United States v. Alabama G.S.R. Co.*, 142 U.S. 615, 12 S.Ct. 306, 35 L.Ed. 1134 (1892). *See also Luckenbach S.S. Co. v. United States*, 280 U.S. 173, 50 S.Ct. 148, 74 L.Ed. 356 (1930) and *Logan v. Davis*, 233 U.S. 613, 34 S.Ct. 685, 58 L.Ed. 1121 (1914). The citation provided in this majority opinion, *Winkler v. Andrus*, 594 F.2d 775 (10th Cir.1979), does not alter my perspective. That case, relating to inappropriate agency action and what was in effect stonewalling after a discovered mistake, cannot justify what was done here.

How then do we get to taxation under the majority's conclusion? It is apparently discerned that the labor contractor/construction manager is an "agent" and so its labor contracting becomes labor contracting of the governmental agency as the project owner. *The technical facts of the taxation adaptation require restatement. The tax is imposed on the material supplier which sold the materials to the governmental agency on the basis that the supplier used those materials since it provided labor for the general contractor on the project.* Essentially, the subcontractor does not care whether it is taxed or not since the tax burden is passed on as a price factor to the county hospital.

I object to this conclusion if for no other reason than it is not a valid, logical adaptation of construction operation. To illustrate the invalidity, if the county hospital purchases materials from Ajax Lumber and Fru–Con Construction Corp. uses Downtrodden Carpenter to install, the materials are not taxable. However, if Downtrodden Carpenter fails to create a straw man to sell materials and sells materials to Memorial Hospital of Laramie County and installs for Fru–Con Construction Corp., it

renders the purchases taxable. Ajax Lumber, in selling is tax free because it did not use; Downtrodden Carpenter is tax free in using someone else's materials as long as it had not originally made the sale to the tax-exempt entity.

In the concept presented by this majority, a general contractor becomes an agent of the owner to create a taxable incident but not to maintain the tax-free status. It seems to me that any continuation of this logic would require taxation of all materials when the owner installs, but it has to install through subcontractors who are not suppliers to escape taxation. In the nature of fact, the owner, as an intangible governmental agency, cannot install since it requires hired entities or individuals to perform that service. They become agents and the arrangement becomes taxable.

It would seem that if a contractor or subcontractor acquires the materials for installation and consequent resale to the owner, a taxable event should occur. If the governmental exempt owner acquires the materials from whatever source separate from the labor contract, the acquisition and the installation should be tax free in compliance with both the constitution and the statutory exemptions. This case is not form but rather real substance in construction arrangement and, with the continual increase in sales and use tax, a substantial dollar question.[3] It is suggested that the majority here elevates a figment of characterization over the practical function of contracting. The careful tax planning of the Memorial Hospital of Laramie County in conjunction with advice and review of the taxation authorities should not be eviscerated by the casual characterization of a construction company to be an agent to justify taxation of the material purchases by the governmental agency.

Consequently, I respectfully dissent.

---

3. The Wyoming sales and use tax, which is subject to nearly forty exemptions, and excluding special local option levies authorized for municipalities and the counties, is three percent of the sales price, W.S. 39–6–404, 39–6–405 (sales tax); 39–6–504, 39–6–505 (use tax). The general distribution of the basic tax is sixty-three and one-third percent to the state general fund, one percent collection cost, and the balance to municipalities and counties on a situs of vendor allocation basis (until 6/30/91 when the state's share again increases to two-thirds) W.S. 39–6–411 (sales tax); 39–6–512 (use tax). Assuming a transactional tax cost from the county hospital construction of $100,000, the county government in general, and not the county hospital itself, would get back perhaps less than ten percent of the amount; the state would get slightly more than $64,000 as revenue; and the balance would go, subject to vendor situs question, to the city of Cheyenne, Wyoming. Special option taxes would produce a different result which are additional amounts above the basic three percent levy. The tax levied on the Kelley contract was five percent total, which inevitably means that county hospital patients will pay the tax for funding other instrumentalities of government. Inevitably, the state is taxing itself to redistribute state funds among different entities. Here, the county hospital patient pays the bill.